## LANCASTER et al. v. MAGRILL.
### (No. 2609.)

(Court of Civil Appeals of Texas. Texarkana. Oct. 25, 1922. Rehearing Denied Nov. 6, 1922.)

**1. Master and servant ⚖══276(5)—Finding defective brake caused brakeman's fall from car sustained.**

In action for the death of a brakeman, circumstantial evidence *held* to sustain the jury's finding that his fall from a car was caused by the slipping of the chain on the brake rod; it appearing that he was seen, shortly prior to the accident, standing with his hands on the brake, and that he fell at or about the place he would be expected to wind it, and first inspection after the accident showed that the brake was about half wound.

**2. Death ⚖══99(4)—$15,000 damages to surviving wife and children not excessive.**

Where a railroad brakeman about 45 years old, earning at the time of his death approximately $175 per month, was of good habits, and spent his earnings mainly for his family, a verdict, awarding $10,000 damages to the widow for her pecuniary loss and $5,000 damages to two surviving minor sons, one being 19 years old, was not excessive, though they were earning money at the time of their father's death.

**3. Evidence ⚖══320—Testimony based on deceased's declarations regarding son's education held not objectionable as hearsay.**

Testimony, based on declarations made by deceased that he intended to give his minor surviving son a good education, offered to show damages to the son for his father's death, is not objectionable as hearsay.

**4. Death ⚖══95(3)—Surviving child's damages not limited to period of minority.**

A minor child's recovery for probable benefits lost by the negligent death of his father is not limited to the benefits expected during the period of minority.

**5. Death ⚖══64—Evidence of surviving child's affliction admissible on issue of damages.**

Evidence that a surviving minor child of one negligently killed is afflicted with a physical disorder is material and relevant on the issue of damages for the child's loss of probable parental assistance beyond the period of minority.

Appeal from District Court, Gregg County; P. O. Beard, Judge.

Action by Mrs. Nettie Magrill, temporary administratrix, against J. L. Lancaster and others, receivers. Judgment for plaintiff, and defendants appeal. Affirmed.

Young & Stinchcomb, of Longview, for appellants.

Johnson, Edwards & Hughes, of Tyler, and W. C. Shoults, of Longview, for appellee.

HODGES, J. [1] On the night of December 4, 1920, A. Y. Magrill was killed in the yards of the Texas & Pacific Railroad Company at Longview. This suit was instituted by his widow, as temporary administratrix, for the benefit of herself and two minor sons, to recover damages resulting from the death of Magrill. The appeal is from a judgment against the defendants for $15,000, which was apportioned as follows: To Mrs. Magrill $10,000, to George Magrill $3,000, and to Alex Magrill $2,000. At the time of his death Magrill was a brakeman or switchman in the yards of the appellants at Longview Junction, and was engaged with other members of the switching crew in breaking up a freight train, which a few hours before had arrived from the West over the Texas & Pacific Railroad. As a part of this work it became necessary to shunt or "kick" three cars onto a side track in the appellants' yard. It was the duty of Magrill, as one of the brakemen, to be at the switch leading to the transfer track to "line it up" for the cars to pass, and then ride and stop them when in the clear. One of the three cars to be shunted onto the side track was an oil tank car. This tank car was in front, and was equipped with hand brakes, the wheel of which was on the front end of the platform. Magrill mounted the platform of the tank car at the proper time, took his position at the brake, and was seen to pass the pumphouse as the cars were shunted west. In a very short time thereafter he was found dead, lying upon the track, under circumstances tending to show that after he fell his body had been run over by the cars and dragged several feet. Another employee stopped the cars some distance further down the track.

In her petition the appellee alleged, in substance, that the brakechain was improperly and negligently fastened to the end of the brake rod. The usual and proper way of fastening the chain to the brake rod was by means of a link at the end of the chain, large enough to pass over and fit loosely in the hook at the end of the brake rod. But in this instance the chain was fastened to the brake rod by being wrapped around and bolted so that it would fit closely and clamp the rod when under pressure from a turn of the brake wheel. That the end of the brake rod was slightly bent upward, and the motion of the car would cause the chain to slip down on the rod; that in winding the brake, when that became necessary, the chain would clamp the rod, and under additional force, when applied, would slip and cause the brake wheel to suddenly turn unexpectedly to the person operating it. This defect, it is alleged, was the cause of the death of Magrill. It is claimed that on this occasion he attempted to wind the brake at the proper time; that

⚖══For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

the chain had slipped down on the brake rod, and clamped the rod when pressure was applied, and then suddenly slipped, causing Magrill to lose his balance and fall in front of the car.

The court submitted the case to the jury on special issues, all of which were answered in favor of the appellee. The jury found, in effect, that the brake was defective in the manner alleged by the plaintiff; that it was negligence on the part of the appellants to permit the car to be equipped with a brake in that condition; that such negligence was the proximate cause of Magrill's death; that Magrill was caused to fall from the platform of the car by reason of the sudden slipping of the chain on the brake rod, occasioned by the manner in which it was fastened; that Magrill was not guilty of contributory negligence.

While there are many assignments and numerous propositions embraced in the brief of the appellants, the principal ground relied on, apparently, for a reversal of this judgment is the insufficiency of the evidence to justify a finding that the death of Magrill was caused by the defective condition of the brake, or by the manner in which the chain was fastened around the brake rod. The evidence relied on to show what caused Magrill to fall was mainly circumstantial. No one saw him at the time he fell. The testimony shows that the accident occurred after dark. One witness stated that he was at the pumphouse and saw Magrill standing on the front end of the tank car as it was being shunted onto the side track. Magrill at that time was standing with his hands on the brake. In a very short time afterwards Magrill was found dead. The evidence indicated that he fell at a point where he was expected to begin winding the brakes for the purpose of stopping the car. His body was lying across the track, and the indications were that it had been dragged some 10 or 15 feet from where it fell. Another witness testified that prior to the time the cars had been shunted he, at the request of Magrill, had released this particular brake, and it then appeared to witness to be in good working order. A short time after Magrill's death this witness had occasion to examine the brake, and found that it was about half wound. On the day following the accident this car was inspected, and the brake rod and chain were found to be in the condition alleged by the plaintiff. Experiments made later indicated that the ordinary motions of the car would cause the chain to slip down some inches from the hook on the end of the brake rod; that when wound the chain would clamp the rod with more or less of friction; that under pressure applied at the brake wheel the chain would then slip along towards the hook. While none of the experiments disclosed a slipping of such violence as to throw the op-

erator of the brake off his balance, experts testified that such a result might follow. There was also testimony tending to show that the manner in which this chain was fastened was a dangerous method, and was liable to produce the very hazard alleged by the plaintiff. The appearance of the brake rod indicated that the chain had been slipping back and forth for some time. Upon these facts the jury concluded that the death of Magrill was caused by the defect in the brake appliance.

The attack in this appeal is directed mainly against the inference drawn by the jury that Magrill's fall from the car was caused by the sudden and unexpected slipping of the chain on the brake rod. The contention is that the evidence was insufficient to do more than create a surmise that such a situation occurred; that this was only one of the several equally probable causes of the fall, and for that reason the burden of proof assumed by the plaintiff had not been legally discharged.

It is true that in cases of this character it devolves upon the plaintiff in the suit to prove with reasonable certainty, not only the negligence alleged, but that such negligence was the cause of the injury. It is also true that when circumstances are relied on to supply the necessary proof those circumstances must do more than to show a mere probability that the injury resulted from the cause alleged. The important inquiry then is, What did cause Magrill to fall from the car? Only two probable causes of the fall are suggested by the record: (1) An accidental misstep, or the motions of the cars; and (2) the sudden slipping of the brake chain. What was Magrill doing at the time he fell? There are circumstances tending to show that he was winding the brake. The brake had been released before the car was moved. Magrill was seen just a short time prior to the accident, standing with his hands on the brake, in an attitude indicating a readiness to wind it at the proper time. He fell at or about the place he would be expected to wind the brake. The first-known inspection of the brake after the accident showed that it was about half wound. No one except Magrill, so far as known, had touched the brake from the time it was released before the cars were moved till this inspection was made. If he fell while winding the brake, evidently there must have been something abnormal in the operation that caused him to fall. If there was something abnormal there is only one inference to be drawn as to what that was. Let us take the other probable cause—a misstep, or an accidental losing of his balance. Magrill was apparently an experienced railroad man, and must have been accustomed to standing in that position and doing that kind of work under just such conditions. It does not appear that there was anything in the

movement of the cars, or the condition of the track, that would make this particular service at that time more hazardous than usual. When the evidence is fairly weighed, that which points to the defective brake as the cause strongly preponderates. Of course it is not conclusive, and the law does not require that it should be. A substantial basis for a reasonable inference only is demanded. Just what is a substantial basis for a reasonable inference is not susceptible of any accurate definition. In all such cases we must depend largely upon the sound discretion and unbiased judgment of the trial court or the jury. We conclude that the evidence was sufficient to sustain the findings of the jury upon that issue.

[2-5] Appellants contend also that the verdict in favor of Mrs. Magrill was excessive. Magrill was about 45 years old, and was earning at the time of his death from $175 to $180 per month. He was a man of good habits, and his earnings were spent mainly for the benefit of his family. The court properly restricted the damages to be allowed in favor of the widow to the pecuniary loss she sustained. The jury had a right to conclude that had Magrill lived to the normal end of his life he would have contributed much more than $10,000 to the benefit and support of his wife. Over the objection of the appellants the court permitted the introduction of testimony for the purpose of showing that George Magrill, 19 years of age, had some form of heart trouble, and that his father intended to give him a good education. The objection is that the testimony was hearsay, being based upon the declarations of Magrill made during his lifetime. It is also objected to upon the ground that any physical disorder from which George Magrill might be suffering was immaterial and irrelevant. The testimony was not subject to the objection that it was hearsay. There was no better method of determining what Magrill's intentions were regarding his son than the declarations made by him prior to his death. The objection that any testimony regarding any disease of George Magrill was immaterial is also untenable. The jury allowed George the sum of $3,000. Presumably much of this was based upon the assumption that his affliction would cause him to receive a more liberal allowance from his father, and that this allowance would probably extend beyond the period of minority. The law does not limit the expectancy of children in cases of this character to the period of minority. Railway Co. v. Rasberry, 13 Tex. Civ. App. 185, 34 S. W. 794; T. & P. Ry. Co. v. Walker (Tex. Civ. App.) 225 S. W. 837, and cases cited. Parental assistance after maturity to those handicapped by some personal affliction is too common to be ignored in estimating the probable benefits lost by the pre-

mature death of the parent. It is true that both George and his brother Alex were earning money at the time of their father's death, but that fact did not prevent them from expecting liberal contributions from their father. The objections that the verdict is excessive are overruled.

The court properly instructed the jury upon the burden of proof and upon all the important issues involved in the case. The charge was clear, and as a whole was fully as liberal towards the appellants as they had a right to expect. The issue of contributory negligence was not raised by the evidence.

There are numerous other assignments of error, all of which have been examined, and are overruled without discussion.

The judgment will be affirmed.