## SHELL PETROLEUM CORPORATION v. MAGNOLIA PIPE LINE CO.
### No. 1601.

Court of Civil Appeals of Texas. Waco.
May 30, 1935.

Rehearing Denied July 10, 1935.

Touchstone, Wight, Gormley & Price, of Dallas, for appellant.

W. H. Francis and Walace Hawkins, both of Dallas, for appellee.

GALLAGHER, Chief Justice.

This suit was instituted by appellee, Magnolia Pipe Line Company, a corporation, against appellant, Shell Petroleum Corporation, to recover damages for the breaking of appellee's pipe line alleged to have resulted from the negligence of appellant, its servants and employees. The damages claimed were the cost of repairing the broken line and the value of the crude oil lost. Appellant alleged that it held a valid oil and gas lease on the land across which appellee's pipe line was laid and maintained, and that it was in lawful possession of the premises thereunder, and charged appellee with various acts and omissions which it alleged·caused or contributed to the breaking of the pipe line and the loss of oil therefrom. Appellant also filed a cross-action against H. E. McClelland, B. S. Bell, D. C. Gallentine, and L. L. Arnold, in which it is alleged that each of said parties was present and participated in the transaction complained of by appellee; that while denying that said parties, or any of them, were negligent, it impleaded them to recover indemnity or contribution from them to the extent of appellee's recovery against it in event it should be found that they were in fact negligent.

The case was submitted to the jury on thirty-eight special issues, in response to each of which the jury made a separate finding. Such findings, so far as material to the issues of law hereinafter discussed, were in substance as follows:

(1) The Shell Petroleum Corporation, its servants and employees, broke Magnolia Pipe Line Company's six-inch pipe line on

or about 11 o'clock p. m., January 25, 1932, while moving its truck and trailer onto and across said line.

(2) The act of the Shell Petroleum Corporation, its servants and employees, in moving or pulling its truck and trailer onto and across such pipe line, was, under the circumstances, negligence.

(3) Such negligence was the proximate cause of the break in the line, and

(4) The proximate cause of the loss of crude oil.

(31) H. E. McClelland (in charge of the truck men) at the time and upon the occasion in question, prior to the breaking of the pipe line, knew of its existence.

The other findings of the jury were consistent with the findings here recited and supported the judgment rendered by the court that appellee recover of appellant the sum of $3,227.50, $115 thereof being the amount expended in repairing the pipe line and the remainder the value of crude oil lost on account of the break, as found by the jury, and further that appellant recover of said H. E. McClelland the sum of $115, the amount recovered by appellee against it as the cost of repairing the pipe line. Shell Petroleum Corporation alone has appealed.

## Opinion.

Appellant assails the sufficiency of the evidence to support the second finding of the jury that the act of the Shell Petroleum Corporation, its servants and employees, in moving or pulling its truck and trailer onto and across appellee's pipe line, was, under the circumstances, negligence; and in that connection also assails the sufficiency of the evidence to support the thirty-first finding of the jury that McClelland (truck man in charge), prior to the breaking of appellee's pipe line, knew of its existence. The Elder tract contained 154 acres. Appellant had an oil and gas lease thereon. Prior to the time appellant took actual possession of the leased land, appellee, under an easement granted by the owner, laid its pipe line across the same. Two such lines, laid parallel, were maintained by appellee at the time of the accident. Appellant also maintained two pipe lines parallel with and in close proximity to appellee's lines. Both appellee's and appellant's lines were buried in the earth at places and at other places exposed to view. Appellee's lines, where so exposed, were painted blue, and appellant's lines were painted yellow. Exposed places showing such different colors were located both above and below the scene of the accident, and within less than 300 feet of the same. The right of way for appellant's pipe line was clear of underbrush and in places showed indications that a lineal excavation along the same had been made and refilled. A telephone line along said right of way was maintained by appellee. Appellant, at the time of the accident, had drilled and was operating ten producing wells on said lease. Well No. 5, from which appellant was attempting to remove a derrick, was located, under the supervision of its engineers, several months before the accident, within about 40 feet of appellee's pipe line. Appellant constructed slush pits in connection with such well in part on appellee's right of way. Appellant also constructed and buried a four-inch flow line from said well upon and across appellee's said pipe line. Appellant also built and buried a water line for a great distance parallel to and along appellee's pipe line to a point within less than 50 feet of the place where such pipe line was broken. Mr. Davenport, appellant's district superintendent in charge of its drilling and producing operations in East Texas, maintained his office and headquarters, on this particular lease, within a quarter or a half a mile of the scene of the accident, and had done so for more than a year prior thereto. He was in special charge of drilling and production on this lease. He had in his office maps showing the location of appellee's pipe lines across the same and the ownership of such lines. He testified to the number and location of the pipe lines owned and maintained by appellee on said lease, and did not claim in that connection that he had acquired such information subsequent to the accident. He personally gave the order to appellant's transportation department to remove the derrick from well No. 5. Said well and appellee's pipe line adjacent thereto were located in a creek bottom. The ground in the vicinity of said well was at that time covered with water and rain was still falling. Appellant's foreman of transportation ordered the operators of two trucks to go to said well, load the derrick thereon, and remove it. Some difficulty was experienced in getting the trucks to the well, but one truck with attached trailer succeeded in reaching the same. The derrick was then torn down and about one-half thereof, weighing ten or twelve thousand pounds, loaded on said truck and trailer.

When appellant's employees in charge attempted to start said truck, it became mired and it was impossible to move the same by its own power. About 5 o'clock in the afternoon, appellant's transportation foreman sent H. E. McClelland, who described himself as a truck driver and "straw boss," to aid the men in charge of said truck, and instructed him to get the same out of said bottom. The wheels of both truck and trailer had then sunk in the ground to the axles. McClelland finally placed another truck equipped with a winch on the adjacent hill and extended a 300 foot steel cable from it to the mired truck. Being unable by this means to move said truck, he procured two sixty-horsepower caterpillar tractors and attached them to said winch truck, and with the combined power of all the same, literally dragged the loaded truck and trailer along the surface of the ground, with their wheels cutting furrows therein, onto and across appellee's pipe line. The force was sufficient to remove a whole joint or section of said. line. McClelland testified that he first went to the mired truck before taking charge of the attempt to remove the same; that he saw there a marker indicating the location of appellant's flow line; but denied having seen anything there to indicate the location of appellee's pipe line and claimed that he did not know it was there. The length of time he had been employed on the lease and his opportunities for acquiring knowledge of the existence and location of appellee's pipe lines were not further shown.

■ Appellant, in presenting said assignments, apparently assumes that knowledge on the part of McClelland of the existence and location of appellee's pipe line was a condition precedent to the existence of any duty on the part of appellant to cause the exercise of care to avoid injuring the same. Appellee did not seek to recover any damages against McClelland or any of the other truckmen engaged with him in dragging said loaded truck and trailer across its pipe line. Its suit was against appellant alone, and it sought to charge appellant with responsibility for the acts of its said employees under the doctrine of respondeat superior. Under this doctrine the master is responsible for want of care on the part of the servant toward those to whom the master is under the duty to use care, provided the failure of the servant to use such care occurred in the course of his employment. 29 Tex. Jur. p. 417, § 245; International & G. N. Ry.

Co. v. Anderson, 82 Tex. 516, 520, 17 S. W. 1039, 27 Am. St. Rep. 902. In determining whether such duty on the part of the master exists, the rule of foreseeableness applies, and the exercise of appropriate care is required when he has actual or constructive knowledge of the danger in the performance of the action. See, in this connection, 39 C. J. p. 1268, §§ 1450, 1451 et seq.; Id. p. 1265, § 1446; Mitchell v. Boston & M. R. R., 68 N. H. 96, 34 A. 674, 676. His liability for the failure of his servant to exercise the requisite care is founded on his right of control and superintendence over such servant and the duty imposed upon him in the management of his own affairs, whether in person or by employees, to conduct the same so as not to injure another. The act of the servant within the scope of his employment must therefore be considered to be the act of the master, for which he is liable to the same extent as if he had performed such act in person. 39 C. J. p. 1282, § 1471. Appellant, being a corporation, necessarily acted, in operating said lease, through its agents or employees. If it had, through its said superintendent in charge of operations thereon or otherwise, actual or constructive notice of the existence and location of appellee's pipe line, it was charged with the duty of exercising ordinary care to avoid injuring the same, and such duty existed whether the act which produced the injury was performed by such superintendent in person, by employees in his presence, or by employees sent to perform the same, whether such employees knew of the existence of appellee's pipe line and the danger of injury thereto or not.

■ Appellee was not required to show by direct testimony that appellant, through its said superintendent or otherwise, knew of the existence and location of appellee's pipe line. All that was required of it was to introduce testimony of attending facts and circumstances from which a reasonable mind might infer, deduce, or conclude that such was the case. Gulf, C. & S. F. R. Co. v. Battle (Tex. Civ. App.) 169 S. W. 1048, pars. 2 and 3 (writ refused); International & G. N. R. Co. v. Finger (Tex. Civ. App.) 16 S.W.(2d) 132, 134, par. 3; Lancaster v. Magrill (Tex. Civ. App.) 244 S. W. 1078, 1079, 1080 (writ. refused); Houston, E. & W. T. Ry. Co. v. Boone, 105 Tex. 188, 193, 194, 146 S. W. 533; Hutcherson' v. Amarillo St. Ry. Co. (Tex. Com. App.) 213 S. W. 931, 933, par. 2;

Fort Worth & D. C. Ry. Co. v. Stalcup (Tex. Civ. App.) 167 S. W. 279, 282, par. 1 (writ refused); Texas Cities Gas Co. v. Ellis (Tex. Civ. App.) 63 S.W.(2d) 717, 721, 722. The evidence in this case meets the test prescribed. No issue with reference to knowledge of appellant concerning the existence of appellee's pipe line at the place of the accident was submitted or requested. Since such issue was raised by the evidence, it must be deemed to have been found by the court in such manner as to support the judgment. 3 Tex. Jur. p. 1066, § 752, and authorities there cited. Appellant's contention that the evidence is insufficient to support the second finding of the jury above recited is overruled. It is therefore unnecessary for us to determine whether the evidence is sufficient to support the finding of the jury that McClelland, prior to the injury to appellec's pipe line, knew of its existence. As before stated, appellee was not seeking a·personal recovery against McClelland. Such issue was apparently submitted in connection with appellant's cross-action against him. The court rendered judgment in favor of appellant thereon. He has not appealed.

■ Appellant assails the sufficiency of the evidence to support the fourth finding of the jury that the negligent breaking of appellee's pipe line was the proximate cause of the loss of crude oil. We do not understand that appellant questions the causal connection between the breaking of the line and the escape of the oil therefrom. Its contention is that appellee's employees in charge of said line and of the pumps used in operating the same knew, or ought to have known, of the break and its location and should have cut said particular line out of service and stopped the flow of oil therein. Appellee's system of pipe lines and the location of pumping stations thereon was rather complicated, and we will not undertake to describe the same in detail. The break in this particular line occurred about 10 or 11 o'clock at ·night. No notice thereof was given to any of appellee's employees. The first intimation of trouble was about 12 o'clock that night, when a pump in that area was started and it was found that its operation did not produce the pressure it should have produced. This result was not attributed at the time to a break in any of the·lines but to pump, trouble. Ordinarily it would take two or three hours to ascertain whether such trouble was the real cause of inability to produce pressure. After considerable lapse of time, consumed in a thorough test of the pump, the inability to produce pressure was attributed to a possible break in some of appellee's lines and an inspector was sent out to try to locate the same. About 7 o'clock the next morning the break was located and that particular section of line cut out of service. The issue of the loss of crude oil as the proximate result of the break in appellee's pipe line was clearly raised by the evidence, and the court did not err in submitting the same.

We have examined all the contentions presented by appellant in its brief and have reached the conclusion that none of them require a reversal of the judgment, and the same is therefore affirmed.