IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs March 10, 2000

## FLOYD CAMPBELL v. CORRECTIONS CORPORATION OF AMERICA

**Appeal from the Chancery Court for Wayne County**
**No. 10306      Jim T. Hamilton, Chancellor**

---

**No. M1999-01082-COA-R3-CV - Filed August 7, 2001**

---

This is an appeal by an inmate in a prison operated by Corrections Corporation of America (CCA). His claim stems from the monetary loss he received as a result, he alleges, of CCA employee(s) adding an unauthorized name and number to Mr. Campbell's call list which resulted in unauthorized charges. The court below dismissed Mr. Campbell's complaint on the grounds that the complaint did not allege a cause of action against CCA. We disagree. Mr. Campbell did sufficiently allege a cause of action against CCA for the negligence of its employee(s) in violating prison policies and adding an eleventh name and number to his call list without his permission or authorization. Further, CCA may be held vicariously liable for the negligent acts of its employees and, therefore, is a proper defendant.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Reversed and Remanded**

PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., and William C. Koch, Jr., J., joined.

Floyd Campbell, Pro Se, Clifton, Tennessee.

Tom Anderson, Jackson, Tennessee, for the appellee, Corrections Corporation of America.

### OPINION

Mr. Campbell, an inmate of the Department of Correction, filed this action against Correction Corporation of America ("CCA"), a private prison contractor who operates the prison where Mr. Campbell is incarcerated, South Central Correctional Center ("SCCC"), alleging that his inmate telephone account had been accessed and utilized by an unknown person without his knowledge or permission. He alleged that CCA had a duty to prevent unauthorized access and that its negligence was responsible for his loss of money. CCA filed a motion to dismiss, pursuant to Tenn. R. Civ. P.

12.02(6) for failure to state a claim upon which relief can be granted, on the basis the complaint failed to allege any actions or inactions by CCA which would entitle Mr. Campbell to relief. The trial court granted the motion to dismiss, and Mr. Campbell appealed.

A Tenn. R. Civ. P. 12.02(6) motion to dismiss for failure to state a claim upon which relief can be granted tests only the legal sufficiency of the complaint, not the strength of the petitioner's proof. *Cook v. Spinnaker's of Rivergate, Inc.*, 878 S.W.2d 934, 938 (Tenn. 1994). The basis for the motion is that the allegations contained in the complaint, considered alone and taken as true, are insufficient to constitute a cause of action as a matter of law. *Id.* In resolving the issues in this appeal, we are required to construe the complaint liberally in the plaintiff's favor and take the allegations of the complaint as true. *Bell v. Icard, Merrill, Cullins, Timm, Furen and Ginsburg, P.A.*, 986 S.W.2d 550, 554 (Tenn. 1999). Our standard of review on appeal from a trial court's ruling on a motion to dismiss is *de novo*, with no presumption of correctness as to the trial court's legal conclusions. *Stein v. Davidson Hotel Co.*, 945 S.W.2d 714, 716 (Tenn. 1997).

Mr. Campbell's allegations, which we must accept as true for purposes of the motion, are as follows. Inmates are given phone lists and phone accounts. Calls may be placed only to those persons or numbers on the authorized list, and only authorized numbers are added to the list. Using an access code individual to the inmate, only the inmate is supposed to be able to make a call, and payment comes from the inmate's phone account.

Beginning sometime around April 13, 1998, a telephone number appeared on Mr. Campbell's phone list that he did not request be added to his list. From about April 13, 1998 until May 31, 1998, telephone calls were made to this newly-added telephone number by an unknown person or persons. The total amount deducted from Mr. Campbell's phone account for these calls was approximately $125.00.

Mr. Campbell filed a grievance on May 25, 1998, apparently after learning of the charges to the account. He complained that money was being taken from his phone account "by someone else using my TDOC number." Among other things, he asked for a new secret number for his phone account.

In his grievance, Mr. Campbell alleged he had informed his counselor on May 20 that someone had been tampering with his phone account and had asked her to put a stop payment on his account and that he had asked other correctional officers for help. He asserted his account had dropped from $392.72 on May 20 to $280.71 as of the date he filed his grievance.

Mr. Campbell received a response in which the grievance board "concurred with the supervisor's response, while recommending that this matter be investigated further." The supervisor's response referred to by the board was to the effect that the supervisor had printed out a summary of the phone calls made on Mr. Campbell's account. He also stated:

A majority of the calls were made to Ms. Camella Fulton. "I spoke with Ms. Fulton . . . and she assured me she knew and spoke with I/M Campbell on a regular basis. From 5-1-98 through 5-25-98 there were over $100.00 worth of calls made to Ms. Fulton alone. I gave this printout to Counselor Richey to discuss with I/M Campbell. I assigned I/M Campbell a new access code and feel there is nothing more I can do.

The warden reviewed the grievance board's decision, agreed with the proposed response, and added the following statement:

I have personally done some additional investigating and have found that the person to whom counselor Richie talked is the wife of an inmate at another facility. All info will be packaged and sent to that facility for their consideration as a disciplinary.

Thus, it would appear there was some question whether Mr. Campbell had made the calls or whether his access code had been used to make the calls without his knowledge.

He responded to the response from the grievance committee by stating that he wanted proof (recordings) of the calls he supposedly made to Camella Fulton. He notes that he eventually saw the warden regarding this grievance and that Camella Fulton was not on his phone list; it was Rhonda Allen who had been added to his list by someone unknown. He also asked to be informed why Rhonda Allen had been added to his phone list on April 15 as his sister when she was not his sister and he had not requested she be added. Adding that name made his list longer than the maximum allowed (ten). He also submitted a copy of his phone list for April, which did not include Rhonda Allen or Camella Fulton. The form included instructions that changes to the list could only be made during the first full week of April, July, October, and January, except in emergencies.

In his brief, Mr. Campbell explains his claim clearly:

The proper procedure for Inmate Telephone Accounts is for the inmate to submit a request that a certain telephone number be added to the inmate's list. Once approved by the prison administration, the number is added to the computer system under the inmate's access code. When an inmate wishes to make a telephone call, the inmate is required to input the telephone number and then the access code. The computer determines if the number is on the inmate's approved telephone list and, if so, connects the number. If the inmate has not called collect, the cost of the call is automatically deducted from monies previously deposited by the inmate and/or the inmate's family in the inmate's Telephone Account.

The access code assigned to an inmate is the inmate's T.D.O.C. number, which is stamped on the inmate's clothing and listed on the inmate's identification card. This identification card is required to be placed in the window of the cell door during each institutional count, in full view of all inmates and staff. The identification card is also required to be submitted to other inmates when checking out such items as

cleaning supplies and library books. Therefore, the access code of each inmate is not confidential. Any inmate can determine the T.D.O.C. number, and therefore the telephone access code, of another inmate with ease. The telephone numbers themselves, however, are supposed to remain confidential. Only the inmate requesting the addition of the telephone number and the prison officials responsible for approving and entering the telephone number on the computer system would have access to the number.

. . .

Logically, this negligence could only have been accomplished by employees of Appellee, through a lack of training and/or supervision on the part of Appellee. Therefore, Appellant alleged actions on behalf of Appellee that sustain the legal theory of negligence. Since any number of Appellee's employees could have performed the negligence, Appellant also put forth the legal theory of respondent superior. Appellee is responsible for the negligence on any of its employee's part toward the inmates under Appellee's supervision. See *Shell Petroleum Corporation v. Magnolia Pipe Line Company*, 85 S.W.2d 829. Appellee is also liable for injuries done to the property or monies of inmates under Appellee's supervision resulting from the acts of any of Appellee's employees. See *Mid-Continent Pipeline Company v. Crauthers, Oklahoma*, 267 F.2d 568.

CCA's motion to dismiss and its position on appeal is that Mr. Campbell's complaint is that his inmate phone account has been accessed and utilized without his knowledge or permission, "presumably by another unknown inmate." Therefore, CCA contends, the allegations "are for actions or inactions on behalf of certain unidentified individuals, but do not include any specific allegations against the Defendant, CCA."

To the contrary, we interpret the complaint to allege negligence by employees of CCA in, at least, allowing an unauthorized person and phone number to be added to Mr. Campbell's list, thus making the charging of these calls to his account possible. According to his allegations and documents submitted in support thereof, the adding of that name and number was contrary to two prison policies. In addition, he alleges he asked for a stop payment on his telephone account and for help regarding the charges eleven days before the situation was corrected and that additional calls were charged to him during that time.

Therefore, we conclude Mr. Campbell has sufficiently alleged, for purposes of a Tenn. R. 12.02(6) motion, negligent conduct by employees of CCA which may have resulted in his loss of money. The question, therefore, is whether these allegations against CCA employees, some identified and some not, constitute allegations against CCA, the only defendant. We believe they do.

It is well established in Tennessee that an employer is vicariously liable for the actions of its employees under the doctrine of respondeat superior as long as the employee is acting within the

scope of his duties. *Tennessee Farmers Mut. Ins. Co. v. American Mut. Liab. Ins. Co.*, 840 S.W.2d 933, 937 (Tenn. Ct. App. 1992); *Bowers v. Potts*, 617 S.W.2d 149, 156 (Tenn. Ct. App. 1981); *Smith v. Keyport Self-Storage*, No. W1998-00810-COA-R3-CV, 2000 WL 558604 at *4 (Tenn. Ct. App. May 5, 2000) (no Tenn. R. App. P. 11 application filed). Moreover,

> [t]he right of a person who has been injured or whose property has been damaged by negligence of an employee to sue the employer without joining the employee as a defendant has been well established in Tennessee by an opinion of this Court in *Williams v. Pritchard*, (1957), 43 Tenn. App. 140, 306 S.W.2d 46, wherein the Court quoted with approval from Volume 2 Am. Jur. as follows:
>
>> On the question of joinder of principal and agent as parties defendant in actions predicated upon the tort of the agent, there is some lack of harmony in the decisions. According to the general rule, if the tort for which the plaintiff sues was committed by an agent so that there is liability upon both the agent, for the commission of the tort, and upon the principal, for the act of the agent within the scope of his employment, both principal and agent may be joined as parties defendant. Under this rule, the principal and agent may be sued separately or as joint tortfeasors, at the election of the one injured. It is not necessary to join principal and agent as joint tortfeasors or trespassers.

*Rankhorn v. Sealtest Foods*, 479 S.W.2d 649, 652 (Tenn. Ct. App. 1971).

In *Rankhorn*, this court held that the employer was not released from liability even though the plaintiff had taken a voluntary non-suit as to the employee defendant. 479 S.W.2d at 652. This court held that the employer was still liable under a *respondeat superior* theory for the employee's actions even if the plaintiff chose not to proceed against the employee and only against the employer. *Id*. This is exactly what Mr. Campbell has done in this case.

The test for holding an employer liable requires the plaintiff to prove "(1) that the person who caused the injury was an employee, (2) that the employee was on the employer's business, and (3) that the employee was acting within the scope of his employment when the injury occurred." *Tennessee Farmers Mut. Ins. Co. v. American Mut. Liab. Ins. Co.*, 840 S.W.2d at 937. Taking the allegations of the complaint as true, Mr. Campbell has alleged negligence on behalf of CCA employees by allowing the unauthorized name and number to be added to Mr. Campbell's list and failing to take action to prevent further loss. Therefore, he has met the requirements to allege an action against the employer, CCA.

This court has previously held that CCA is the proper defendant for negligence claims or torts arising from CCA's operation of correctional facilities or the acts of its employees. *Martin v. State of Tennessee*, No. M1999-01642-COA-R3-CV, 2001 WL 747640 at *3 (Tenn. Ct. App. July

-5-

5, 2001) (no Tenn. R. App. P. 11 application filed); *Greer v. Corrections Corp. of America*, No. 01A01-9604-CH-00150, 1996 WL 697942 at *2 (Tenn. Ct. App. Dec. 6, 1996) (no Tenn. R. App. P. 11 application filed) (appellate court reinstated claim against CCA for conversion of inmate's personal property, holding that CCA could be liable for the actions of its employees under the doctrine of *respondeat superior*).

We reverse the trial court's order dismissing Mr. Campbell's complaint and remand this cause for further actions not inconsistent with this opinion. Costs of this appeal are taxed to the appellee, CCA.

_____
PATRICIA J. COTTRELL, JUDGE