**LITTLE ROCK FURNITURE MFG. CO.**
**v. DUNN.**

No. 15024.

Court of Civil Appeals of Texas.
Fort Worth.

Feb. 18, 1949.

Rehearing Denied March 18, 1949.

Leachman, Matthews & Gardere and Henry D. Akin, all of Dallas, for appellant.

Harvey L. Davis and J. A. Blakeley, both of Dallas, for appellee.

McDONALD, Chief Justice.

Appellee Dunn, as plaintiff in the trial court, recovered judgment against appellant Little Rock Furniture Manufacturing Company on a verdict of the jury for damages resulting from a collision between plaintiff's automobile, in which he was riding, and appellant's truck.

Under the first point of error it is contended that defendant should have had an instructed verdict, and under the second point that it should have had judgment non obstante veredicto, on the ground that plaintiff was guilty of contributory negligence as a matter of law. The jury verdict was favorable to plaintiff on the issues of contributory negligence.

The collision occurred about 11:30 at night in clear weather. The truck, which had developed motor trouble, was parked on the highway, partly on and partly off the paved portion. Plaintiff drove into the rear end of the truck. The verdict and judgment being favorable to plaintiff, the evidence will be viewed in the light most favorable to him.

Plaintiff testified that he had no recollection of seeing the truck or colliding with it. He had no recollection of seeing any flares set out on the highway, nor of applying his brakes. The evidence, including the testimony of a physician who treated him, supports a conclusion that his injuries produced a loss of memory from some time previous to the time of the collision to the time he regained consciousness in the hospital.

The truck lights had been turned off. The jury found that the truck driver failed to place a lighted flare on the highway not less than 150 feet nor more than 200 feet in every direction from which a vehicle might approach the truck. The testimony most favorable to the plaintiff is that the flare to the rear of the truck was about fifty or sixty feet from it. The truck and plaintiff's car were both headed in a

southerly direction. Just prior to the time of the collision another automobile was approaching from the opposite direction and was about even with the rear of the truck when the collision occurred, but had been driven off the highway far enough that there would have been room for plaintiff's automobile to pass between said automobile and the truck. Along the route plaintiff was traveling just prior to the collision there was a slight decline, then a culvert, then a slight incline. The truck was parked about 150 feet beyond the culvert and up the incline. According to the opinion of one witness, the lights of plaintiff's automobile as he came down the decline would not have shone on the truck. The pavement was eighteen feet wide. According to an occupant of the approaching automobile, its lights could have blinded plaintiff as the latter approached the truck. According to the estimate of the only witness who saw the collision—other than plaintiff—both automobiles were traveling about fifty miles per hour. Plaintiff's automobile, according to this witness, turned neither to the right nor to the left, nor changed its speed, as it approached and collided with the truck. Another witness who came to the scene of the collision after its occurrence saw skid marks made, he thought, by plaintiff's tires, leading about 10 or 15 feet up to the rear of the truck.

Plaintiff thought that he could have stopped his automobile within forty or fifty yards if traveling at fifty miles per hour.

Defendant offers the suggestion that plaintiff may have fallen asleep just prior to the collision. He points out that plaintiff had been traveling since about 11:00 o'clock that morning, and attaches importance to the testimony of plaintiff that among the last events he could recall was seeing a road marker saying "37 miles to Dallas." Defendant figures from the testimony that the collision occurred about 43 miles from Dallas, and argues that plaintiff must have dreamed of seeing the road marker saying that it was 37 miles to Dallas. Defendant says that the truck was large, and painted in bright colors, and could easily have been seen by anyone keeping a lookout as he approached it. The occupant of the other car who testified said that he saw the truck when about 400 feet away from it. Defendant says that unless plaintiff was asleep, there is no explanation of why he drove headlong into the rear of the truck without applying his brakes or changing his course.

Brief references will be made to the decisions cited by defendant in support of its contention that the evidence makes out a case of contributory negligence as a matter of law.

Blunt v. H. G. Berning, Inc., Tex.Civ. App., 211 S.W.2d 773, writ ref. In this case the jury found contributory negligence. It was plaintiff who appealed, complaining of such verdict. The decision supports the judgment rendered in the case before us. For one thing, it is in point on the facts with regard to the inability of the injured person to account for his actions due to a loss of memory. The court expressly recognizes the rule to be in such a case that in the absence of direct evidence to the contrary, a presumption would intervene on behalf of the injured party to the effect that he was in the exercise of due precaution for his own safety so as to preclude a finding of contributory negligence as a matter of law. The court went on to declare that in the case before it the question of contributory negligence was one for the jury to decide.

Henwood v. Gilliam, Tex.Civ.App., 207 S.W.2d 904. Here the court overruled the contention that the evidence showed contributory negligence as a matter of law.

Standard Paving Co. v. Webb, Tex.Civ. App., 118 S.W.2d 456, 458. An important difference between this case and the one before us is that Webb testified concerning the events leading up to the collision. He testified that he did not discover the truck he ran into until he was within twenty feet of it, and failed to offer any reason why he did not, except for a possible suggestion that the lights on his car were not good enough to enable him to see it. The following excerpt from the opinion indicates the reason for holding that the evidence showed contributory negligence as a matter of law:

"A fact that distinguishes this case and the decisions we have followed in our orig-

inal opinion from many of those cited by appellee, in which it was held that the issue of contributory negligence of plaintiff suing for damages resulting from a collision of his car with some negligent obstruction of the highway by the defendant, was a question for the jury, is the absence of any testimony of plaintiff in this case to explain why he did not discover the truck before he swerved his car to the left to avoid colliding with it; his only excuse offered being that he did not see it until right on it."

Cross v. Wichita Falls & S. R. Co., Tex. Civ.App., 140 S.W.2d 567. The conduct of the plaintiff was similar to that of the plaintiff in Standard Paving Co. v. Webb, and we may distinguish it from the case before us by referring to the excerpt just quoted from the Standard Paving case.

We have carefully studied the opinion in Jones v. Sunshine Grocery & Market, Tex. Civ.App., 236 S.W. 614. The opinion contains some statements which, taken alone, might tend to support the arguments defendant makes in the case before us, but we do not consider the decision as requiring a holding that contributory negligence is shown as a matter of law in the case now on appeal. We hold this especially in view of what is said in Blunt v. H. G. Berning, Inc., supra, a much later case, and one in which the application for writ of error was refused, where the plaintiff had suffered a loss of memory, and also in view of what is said in Boaz v. White's Auto Stores, which will be discussed later in this opinion, where death of the injured party prevented an explanation by him of his conduct.

Many cases can be found where it was held on the record before the court that contributory negligence was a question for the jury. A good many of them are cited in the opinion in Cross v. Wichita Falls & S. R. Co., supra. We shall not cite nor discuss all the cases cited by appellee in support of the judgment. The decisions above cited, with the decision which we shall next discuss, are sufficient authority, we think, for overruling the contention that contributory negligence as a matter of law is shown in the case before us.

In Boaz v. White's Auto Stores, 141 Tex. 366, 172 S.W.2d 481, 482, Boaz was killed while crossing a highway. As the court says, "Why he did not get across this 18-foot pavement before the truck struck him rests in pure conjecture." The court then says:

"The above statement, to our minds, leads certainly to the conclusion that it cannot be held, as a matter of law, that the acts of the deceased constituted contributory negligence, for the fact that the cause of the collision rests in conjecture, within itself, precludes such a holding. The presumption is that the deceased exercised ordinary care for his own safety, and in order for respondents to be entitled to have it ruled that, as a matter of law he failed to do so, the burden rested upon them to overcome that presumption by competent evidence so conclusively that reasonable minds could not differ with respect thereto. The question must be approached from the viewpoint of the deceased. His lips are closed and we do not have the benefit of his version of the occurrence. There is not the slightest suggestion that he was bent on self-destruction, and the strongest of presumptions is that he was not. The most probable explanation of the matter is that he misjudged the distance or the speed of the truck, or both. Persons in ordinary travel are often called upon to estimate the speed of approaching vehicles. It is common knowledge that mistakes with reference thereto frequently occur, particularly at night. Such mistakes of judgment fall far short of establishing want of ordinary care. There are many well reasoned opinions by the courts of this State upon the question under discussion. No reason appears why we should undertake to rewrite what is so well written therein. It is thought that the following cases, among others, establish the law in this jurisdiction to be that under the facts of the instant case, it could not be held that, as a matter of law, the death of the deceased was contributed to by his own negligence." (Citing cases).

 We may well apply the foregoing reasoning to the case before us. The presumption is that plaintiff Dunn exer-

cised ordinary care for his own safety. Due to his loss of memory, we are denied the benefit of his testimony as much as if he had lost his life in the collision. There is no suggestion that he was bent on self destruction. The most probable explanation is either that his car lights, as he descended the slight decline, did not shine on the truck, and that when he did see the truck it was too late to stop, or that he was blinded by the lights of the other approaching car. The burden of establishing the defense of contributory negligence was on the defendant. It is only by speculation that we could reach a conclusion that plaintiff was asleep. We do not feel justified in overturning the jury verdict on the record before us.

The jury found that plaintiff failed to keep a proper lookout, but that such failure was not negligence; that he failed to apply his brakes at such distance from the truck as to permit him to avoid colliding with it, but that such failure was not negligence; that he failed to turn his automobile so as to avoid the collision, but that such failure was not negligence; that he failed to heed the lighted flare on the highway, but that such failure was not negligence; that he did not see the truck before the collision; that he did not actually discover that the truck was in a perilous position. In a motion for judgment notwithstanding the answers to designated issues, defendant advanced the contention, and contends here, that as a matter of law the undisputed evidence showed, for instance, that the failure to keep a proper lookout was negligence and a proximate cause of the collision; that the failure to apply brakes was negligence and a proximate cause of the collision; and so on with respect to the other grounds of defense submitted to the jury above set out.

■ For substantially the same reasons we have given in overruling defendant's contention that he should have had an instructed verdict, we overrule his points three to seven inclusive complaining of the matters just mentioned. We have carefully considered the cases cited by defendant, especially Blakesley v. Kircher, Tex.Com.App., 41 S.W.2d 53, but do not believe that they compel a different view. In the case just mentioned the jury found that the acts in question were negligent, but that they were not a proximate cause. In our case the jury in each instance absolved plaintiff from the charge of negligence.

Under appellant's eighth point of error it is contended that a new trial should have been granted on account of a conflict in the verdict.

The fifteenth issue inquired if appellee failed to keep a proper lookout for his own safety. Proper lookout was defined in the charge as such a lookout as an ordinarily prudent person would have kept under the same or similar circumstances.

The sixteenth issue inquired if such failure to keep a proper lookout was negligence, and the seventeenth issue inquired as to proximate cause.

In response the jury found that appellee failed to keep a proper lookout, but that such failure was not negligence. The seventeenth issue, submitted conditionally, was not answered.

It has been held that a finding of failure to keep a proper lookout, where the term is defined as it was defined in the present charge, is equivalent to a finding that the party who failed to keep the lookout was negligent. See Pope v. Jackson, Tex.Civ. App., 211 S.W.2d 958, and cases there cited. Pope v. Jackson was affirmed by the Supreme Court in Austin Road Co. v. Pope, 216 S.W.2d 563, but the questions with reference to the lookout issue were not discussed in the Supreme Court's opinion.

■ It may reasonably be said, therefore, that there was a conflict in the answers to the fifteenth and the sixteenth issues.

The record shows that when the verdict was brought in by the jury, the court inquired of counsel for both parties whether or not they found any conflict in the verdict, and both replied that they did not. He then asked both of them for which party they thought judgment should be on the verdict. Both replied that they thought

the verdict was for the plaintiff. The court then accepted the verdict from the jury.

Rule 295, Texas Rules of Civil Procedure, provides that in case the verdict be incomplete, or in conflict, the trial judge may return the jury for further deliberation. It was doubtless with this rule in mind that the court made the inquiries of counsel just mentioned. This is not a case where there is no verdict, due to conflicts, on which a judgment can be rendered. Judgment was rendered on the findings of negligence and proximate cause relating to the conduct of defendant's truck driver. The burden was on defendant both to plead and prove contributory negligence as a defense, and also to obtain submission of issues relating thereto. The defense was one that it might have waived, either by failing to plead or prove it, or by failing to request submission of applicable issues in the event of failure of the court to submit them. Likewise, we think that defendant could waive any conflict or omission in the verdict with respect to a defensive issue or group of issues. It is not only a conflict that is involved here, but also a failure to answer the proximate cause issue. Defendant had a right to insist that the jury be returned for the purpose of eliminating the conflict, and also for the purpose of requiring them to answer the proximate cause issue (if they could agree on an answer). Defendant may not have intended to waive a defense, but under the circumstances shown by the record we think that it should be held that he did so. If it is not accurate to say that he waived the conflict and the omission in the verdict, it at least should be said that he invited any error that the court may have committed by accepting the verdict and rendering judgment thereon.

Under the ninth point complaint is made of the testimony of the witness Pullen that the truck driver told him, some time after the collision, that he was having battery trouble. We are unable to see how the admission of this insignificant item of testimony, whether erroneous or not, could be treated as of sufficient importance to bring about a reversal of the judgment. Rule 434.

The tenth point reads as follows:

"The error of the trial court in refusing to permit defendant to impeach plaintiff's witness, Pullen, by his prior statements that he could find nothing at the scene of the accident to indicate defendant's truck driver had been negligent."

Questions of counsel, objections, remarks of the court, and a few answers by the witnesses, covering several pages of defendant's printed brief, are set out as relevant to the point of error. We have examined all this carefully. Without writing at length about it, we hold that reversible error is not presented under this point. Some of the proffered impeaching testimony was no more than an effort to show that Pullen had made general statements to the fact that he found nothing at the scene of the accident to indicate that the driver was negligent or had violated the law. Pullen was asked if he had not told the driver that his flares were correctly placed. The attempt to impeach him as to this was by asking the truck driver what Pullen had told him. He was permitted to tell what Pullen said to him about the flares, but the impeaching testimony was limited, properly we think, to the matter of the flares.

A witness said that he saw Pullen step off the distance from the truck to the flare to the rear of the truck, and said that Pullen told him that it was twenty steps. Complaint is made that this was hearsay. Any error that may have been committed was cured by the instruction which the court gave the jury, telling them not to consider the same.

The ninth, tenth and eleventh points, touching on the matters of evidence just discussed, are overruled.

Various special issues, touching on the question of the truck driver's negligence or violations of law, inquired in substance as follows: (1) If he left the truck standing on the paved portion of the highway, and (2) if it was possible to leave the truck standing off the paved portion. There was no issue inquiring if the truck driver was

negligent in such respects. (4) If he left the truck standing on the highway without leaving a clear and unobstructed width of not less than fifteen feet upon the main traveled portion opposite the truck for free passage of other vehicles on the highway. There was no issue inquiring if such act was negligence. (6) If the driver failed to have lighted a clearance lamp at the rear end of the truck displaying a red or yellow light visible under normal atmospheric conditions from a distance of 500 feet from the rear of the truck. No issue on negligence was submitted. (8) If he failed to place a lighted flare at a distance of not less than 150 feet nor more than 200 feet from the truck, placed so as to be plainly observed as a signal by the driver of an approaching vehicle for a distance of 500 feet. No issue was submitted as to negligence.

It is obvious that issues 1, 2, 4, 6, and 8 were submitted by the court on the theory that the acts therein inquired about, if committed, constituted violations of penal laws and were therefore negligent per se. Defendant, under points twelve to fifteen, inclusive, contends that the various acts inquired about in said issues did not, if committed, constitute violations of law, and that the court erred in not submitting accompanying issues inquiring as to whether such acts, respectively, constituted negligence on the part of the truck driver. Defendant did not tender prepared issues to the court, but did object before the charge was given to the jury. Since the issues in question were those on which plaintiff relied for a recovery, the objections made by defendant were sufficient to preserve the point for review on appeal. Rule 279.

Section 10 of Art. 827a, Vernon's Texas Penal Code, provides that no person shall park or leave standing any vehicle, whether attended or unattended, upon the paved or improved or main traveled portion of any highway, outside of an incorporated city or town, when it is possible to park or leave the vehicle standing off the paved or improved or main traveled portion, and provides further that in no event shall the vehicle be left parked or standing on the highway unless a clear and unobstructed width of not less than fifteen feet upon the main traveled portion of the highway opposite the standing vehicle is left free for passage of other vehicles, nor unless a clear view of such vehicle may be obtained from a distance of 200 feet in each direction on the highway.

Defendant contends that the above section does not apply to commercial vehicles, but that the latter are governed exclusively by Sections 9 and 9-a of such statute.

We can find no conflict between the provisions of Section 10, on the one hand, and Sections 9 and 9-a, on the other. It is clear to our minds that the sections in question are cumulative, not exclusive, of each other. It follows that we find no error on the part of the trial court in submitting issues 1, 2 and 4 on the theory that the acts therein inquired about, if committed, constituted violations of the penal laws and therefore amounted to negligence per se.

The answers to the issues just discussed together with the related findings of proximate cause are enough to require a judgment for plaintiff.

As said above, issue 8 inquired about the placing of flares, and was obviously submitted (since no issue as to negligence was included in the charge) on the theory that it involved a violation of law. Defendant says that the facts set out in the issue do not constitute a violation of law. It says that the statute requiring flares, Art. 827a, § 9-a, requires flares to be set out only if the truck is left standing more than fifteen minutes, that the collision here involved took place within ten minutes after the truck stopped, and that the time for putting out flares had not yet arrived. In other words, the argument is that a failure to put out flares during the first fifteen minutes after stopping the vehicle could not be treated as a violation of the statute.

It is undisputed that the truck driver had turned off the lights of the truck before the collision occurred. Issue 10 inquired if turning off the lights was negligence, and issue 11 was the related proximate cause issue. Both were answered in

the affirmative. Defendant argues that the Legislature in enacting Sec. 9 of Art. 827a, requiring lights and reflectors, had preempted the field of regulation so far as lights were concerned, and that there was no duty on the truck driver to do more than to comply with the requirements of said section of the statute. Section 9 not only requires that the vehicles therein described be equipped with the lights or reflectors therein referred to, but also requires the operator to "keep lighted all lamps or lighting devices with which such vehicle is required to be equipped, whether the vehicle is in motion or not."

 The requirement of flares is evidently an added precaution that the Legislature thought necessary, even though the truck was equipped with the lights or reflectors described in section 9. If flares were not required during the fifteen minute period next following the stopping of the truck, and if by any construction of the statutes they did not require the lights to be left on during that fifteen minute period, we think it would be unreasonable to hold that it could not be negligence under the rules of the common law to turn off the truck lights and leave it standing in darkness while parked on the paved portion of the highway during such fifteen minute period.

As we see it, the verdict supports the judgment rendered against defendant.

The eighteenth point of error is: "The verdict is highly excessive."

Four issues were submitted pertaining to damages.

Issues 42 and 43 inquired as to the damages done to plaintiff's automobile. No complaint seems to be made of the finding of $965 pertaining to this item.

Issue 44 inquired as to medical expenses, doctor bills, hospital bills and ambulance bills. The jury found $2151.75, not itemized, but in a lump sum. Defendant says that there is no evidence to show that the $100 charge for an ambulance plane, which transferred plaintiff from Dallas to Oklahoma City, was reasonable or necessary. No references are made to specific portions of the statement of facts in support of this contention, and we do not feel that the rules require us to search through an entire statement of facts to determine whether there is evidence as to the reasonableness of or the necessity for this comparatively small charge. Defendant also says that there is no proof that the $965 bill for chiropractic treatments was reasonable and necessary. Plaintiff's testimony was sufficient to support a finding that such bill was both reasonable and necessary.

The chief complaint is directed at the verdict of $15,000 covering pain and suffering and loss of earning power. Defendant especially complains on the ground that the evidence shows that plaintiff now owns a cafe from which he receives net profits that equal or exceed his earnings before he was injured. The evidence amply supports a conclusion that plaintiff's injuries were very serious, that he has suffered much pain, and that he has a permanent disability of from 35 to 50 per cent. We are not willing to substitute our judgment for that of the jury on this issue.

The judgment of the trial court is affirmed.