HOUSTON, EAST & WEST TEXAS RAILWAY COMPANY v. ORA K. BOONE
ET AL.

No. 2222.   Decided May 1, 1912.

**1.—Argument of Counsel.**

It is permissible for counsel to comment in argument on the fact that witnesses, sworn and placed under the rule by his adversary and present at the time of the occurrence under investigation, were not brought on to testify. (P. 190.)

**2.—Jurisdiction of Supreme Court—Facts.**

The Supreme Court has no jurisdiction to pass on the question of the sufficiency of proof to sustain certain facts, except as a matter of law; that is, whether there was legal evidence tending to sustain the conclusion reached. (P. 191.)

**3.—Negligence—Switching Cars.**

A switchman engaged at night in catching and setting brakes on cars successively kicked in onto a siding by the switch engine was found dead on the track after such operation concluded, no witness having seen the accident. The evidence, here reviewed, is held sufficient to support an inference that his death was caused by negligence of the switching crew in kicking additional cars onto the siding at too rapid speed and without warning to him, while he was engaged in setting the brake on one previously sent in.   (Pp. 190-194.)

Error to the Court of Civil Appeals, Fourth District, in an appeal from Harris County.

Mrs. Boone and others sued the Railway Co. and had judgment, which was affirmed on defendant's appeal.   Appellant then obtained writ of error.

*Baker, Botts, Parker & Garwood, Lane Wolters & Storey,* and *Wm. A. Vinson,* for plaintiff in error.—As a matter of law, there was (1) no evidence of negligence on the part of the railway company, and (2), if there was, it was not shown to have been the proximate cause of Boone's death.   Perkins v. Northern Pac. R. Co., 193 Fed., 219; I. & G. N. R'y Co. v. Hester, 72 Texas, 40; Mo. Pacific R'y Co. v. Porter, 73 Texas, 305; T. & P. R'y Co. v. Shoemaker, 98 Texas, 451; T. & N. O. R'y Co. v. Crowder, 76 Texas, 498; H. & T. C. R. R. Co. v. Loefler, 59 S. W., 558; Duerler Mfg. Co. v. Dullnig, 83 S. W., 889, 87 S. W., 332; Vissman v. Southern R'y Co., 89 S. W., 502; M. K. & T. R'y Co. v. Greenwood, 40 Texas Civ. App., 252; M. K. & T. R'y Co. v. Baker, 99 Texas, 452; G. C. & S. F. R'y Co. v. Anson, 989, 101 Texas, 198; Jones v. Ft. Worth & D. C. R'y Co., 47 Texas Civ. App., 596; C. N. O. & T. P. R'y Co. v. Zachary, 106 S. W., 842; C. N. O. & T. P. R'y Co. v. Johnica, 113 S. W., 844; Watson v. L. & N. R. R. Co., 114 S. W., 292; Steele v. Hillman Land & Iron Co., 114 S. W., 311; Mt. Marion Coal Mining Co. v. Holt, 118 S. W., 825; Paris & G. N. R'y Co. v. Robinson, 53 Texas Civ. App., 12.

Where plaintiffs allege specific acts of negligence as a cause of injuries, and ground for recovery, the doctrine of *res ipsa loquitur* does not apply.   Kennedy v. Street R'y Co., 107 S. W., 16; Lone Star

Brewing Co. v. Willie, 52 Texas Civ. App., 550; Paris & G. N. R'y Co. v. Robinson, 53 Texas Civ. App., 12; Cothron v. Cudahy Packing Co., 73 S. W., 279; McGrath v. St. Louis Transit Co., 94 S. W., 872.

*Hogg, Gill & Jones,* for defendants in error.

Mr. Justice Dibrell delivered the opinion of the court.

Plaintiffs below, Ora K. Boone and others, the surviving wife, the minor child and mother of T. L. Boone, brought this suit in the District Court of Harris County against the Houston, East & West Texas Railway Company to recover damages resulting from the alleged killing of said T. L. Boone on September 30, 1907, at Lufkin, Texas.

The grounds upon which recovery was sought were substantially that deceased, who had theretofore been in the service of the defendant as freight conductor, was at the time of his death temporarily employed as switchman in the railway yards at Lufkin. The duties of a switchman involved the handling and operation of engines and cars, and that, while so engaged in the performance of his duties, it became necessary to switch some cars on to several side or switch tracks, on the night of the accident. By order of defendant's foreman in charge of the switching crew, the deceased "was directed to take charge of tracks Nos. 4 and 5, and to mount freight cars as they were kicked in to be set on that siding, to let them run the proper distance and to set the brake and stop them at the right point." In the proper performance of his duties the deceased mounted a box car that had been kicked on to that siding, and began to set the brake for the purpose of stopping it, which was at a point about six hundred feet from the entrance of the car on the sidetrack. The cars were being kicked into the siding by means of an engine, and the crew, after kicking the first car on track No. 4, kicked another car on track No. 5, and then kicked two other cars on to track No. 4. That the two cars kicked on to track No. 4 shortly after the car on which deceased was mounted for the purpose of setting the brake that such car should serve as a bumper "were kicked in violently and at a dangerous rate of speed, and the brakes thereon were not set, and no one was placed on them to control their speed or to stop them or to lessen their speed in order to prevent damage or injury, and that the said cars were thus propelled violently and rapidly against the car on which deceased was engaged in setting the brakes," and that from the impact from said cars so violently thrown against the car on which deceased was working he was thrown from the car and run over and crushed to death. "That there was no light on the several cars that were kicked in against the car on which deceased was riding, and that there was no warning of any sort given of the fact that they were kicked in or would be kicked in, either at a dangerous rate of speed, or any other speed, before he had finished his duty of stopping the first car, and was ready to stop other cars that were kicked in on the siding of which he had been placed in charge."

The defendant answered by general demurrer, general denial, assumed risk and contributory negligence.

The cause under an appropriate charge by the court was submitted

to a jury, and upon their finding for plaintiffs a judgment for $12,500.00 was rendered against defendant.

The only issue of serious import we feel called upon to determine is whether there is any evidence in the record upon which the jury could base a verdict which pre-supposes negligence on the part of defendant from which the death of deceased resulted. The other questions raised by the assignments refer to certain special charges requested by defendant and refused by the court, and the comment of counsel for plaintiffs on the circumstance of the presence at the trial, of the engineer, fireman and brakeman constituting the switching crew with deceased at or near the place of the accident, as witnesses for defendant, but who were not offered by defendant as witnesses.

The matter and substance of the special charges refused were embodied in the court's general charge, which we think was comprehensive and fair.

The language of counsel for plaintiffs complained of is as follows:

"The defendant's attorneys have used all means to close the light against the manner in which deceased was killed; because they had witnesses, Coker, the engineer, Roberts, the fireman, and Reynolds, the yard-master, placed under the rule, but did not offer them as witnesses; they knew that if these witnesses were introduced counsel for plaintiffs would get testimony from them that would help these plaintiffs in their case and harm the railroad company."

It has always been considered proper, both in criminal and civil cases, for counsel to comment on the absence of witnesses when it is within the power of such defaulting party to produce them, and when such witnesses are possessed of a knowledge of the transaction inquired about. This is especially permissible where such party has such witnesses under process, and within the jurisdiction of the court and fails to place them upon the stand. Comment upon such circumstances cannot be said to be beyond the record, but fairly within it. The value of such comment must be left to the discretion of counsel conducting the case, and the freedom of speech in the argument of counsel for their respective clients can not be circumscribed less than to matters within the record, or fairly deducible therefrom. Missouri Pac. Ry. Co. v. White, 80 Texas, 207.

As heretofore suggested, the most serious question raised in the petition for writ of error is that complaining of the court's failure to instruct a verdict for defendant. There was no eye witness to the death of Boone, and the immediate causes that produced his death, and whether the result of defendant's negligence, must be established by circumstances. Negligence, like any other issuable fact, must be proven, but there exists no rule of evidence which denies the right to make such proof by circumstantial evidence. This principle is laid down in Thompson's Commentaries on the Law of Negligence, Vol. 6, Section 7863, as follows:

"Negligence of either the defendant or the plaintiff need not be shown by direct and positive evidence, but may be inferred from other facts which are proved in the case when such an inference is a *reasonable* and *natural* one to be made, but a presumption of negligence

cannot be based on mere theories or by simple deduction from other presumptions. In other words, a verdict for negligence may be supported by inference, but *such inference must be a logical, probable and reasonable deduction from proved or conceded facts.* Negligence cannot be a mere matter of conjecture, but must be *fairly inferable from the evidence.* This principle permits the admission of *circumstantial evidence to contradict positive and direct testimony* given by eye witnesses. It is not incumbent upon the plaintiff, after proving an accident which implies negligence, to show the particular negligence, when from the circumstances it is not in his power to do so.''

The question, however, for this court is not whether the evidence direct and circumstantial is sufficient to establish the negligence of defendant and that the death of deceased was caused by such negligence, but whether there is any evidence in the record from which the jury might have properly found negligence on the part of defendant in producing Boone's death. Judge Brown, in International & G. N. Ry. Co. v. Vallejo, 102 Texas, 73, very clearly laid down the rule on this subject by which this court is governed, in the following words: ''If there is any evidence in this case which tends to prove negligence on the part of the employes of the railroad company that caused the injury, then an issue of fact was made to be decided by the jury, and of which this court has no jurisdiction. Whether there is such evidence in the record is a question of law which it is the duty of this court to decide.''

If plaintiffs' cause was submitted to this court upon the facts in the record for an adjudication, a very different question would be presented, and we doubt whether the result reached by us would be in harmony with that reached by the jury. On the other hand, we cannot say as matter of law that there is no evidence from which negligence may be reasonably inferred, and from which negligence the deceased met his death. So far as this court is clothed with power, if there is in any given case evidence establishing or tending to establish an issuable fact, the finding of the jury is a sealed book which may not be opened without doing violence to a well fixed rule of jurisdictional limitation. It was within the jurisdiction of the Court of Civil Appeals, so given by law, to have reversed this case on account of the insufficiency of the evidence, if in its opinion the evidence was insufficient, but that court has not seen fit so to do. On the contrary the findings of fact by that court and its conclusions are set forth and fortified by logical and reasonable deductions.

In order to a clearer understanding of the ruling of this court upon the evidence in the record which tends to establish negligence on the part of defendant, and from which it is thought as matter of law the jury might have inferred negligence from which the deceased received his death, we reproduce the material portions of the testimony of S. A. Parris, the only witness who testified upon this subject:

''On the 30th day of September, 1907, I resided at Lufkin, Texas, and was employed by the Houston, East & West Texas Railway Company as switchman. On the occasion in question my associates in switching were A. C. Reynolds, engine foreman and yard master; T. L. Boone, switchman, Lee Coker, engine man, and C. Roberts,

fireman. Boone was switching with others at Lufkin on tracks 4 and 5 and his duties were to take care of all cars kicked down those tracks by the crew, and as the tracks were down grade his duties were to climb on and stop first cars which came down those tracks and set brakes on them so that the following cars would come against them as a buffer; also to see that brakes were not knocked off and allow cars to run out west end of track.

"Boone died on the night of September 30, 1907. After switching some time in east end of yard we brought the engine down main line and foreman Reynolds asked me if I had seen Boone lately. I told him I had not. We then went up tracks 4 and 5, Reynolds between the tracks and I on the outside of No. 5. About five or six hundred feet from east end Reynolds said, 'Here he is,' and I crossed over and found his body lying between tracks 4 and 5, badly mangled. He gasped once or twice after we reached him. His right leg and groin were badly crushed and one of his hands was badly mangled. This was about 11:15 p. m. He was lying on the ground between tracks 4 and 5. His head was toward track 5 and his feet toward track 4; his left hand was on his breast and his right hand partly under him and badly mangled. His lantern was lying in the middle of the track under the cars and was broken.

"The last time I saw Boone alive he was riding car down track No. 4 to set brake when car had run far enough so as to hold other cars which came down same track.

"Yard master Reynolds assigned Boone to his place. He was the only person present that had any authority to assign Boone to that or any other task. He was yard master and engine foreman. Before we quit switching we pushed in on to those tracks probably ten or twelve cars. I think there were three cuts kicked in, including the one he rode in first, which was on track 4. I do not know how many cars had been handled by Boone before we quit switching. He rode in on one car first, and this was followed by a string of some three cars. The cars, when cut off from the engine, were started probably from 4 to 6 miles per hour, but it was down grade and they would be going considerably faster by the time they struck the car used as buffer, as before stated, which was the car I last saw Boone on. No further attention was paid to them by me except to see that they cleared No. 5 track before I cut off cars for No. 5.

"After pushing in of the last string of cars on sidetrack No. 4 it was about five or ten minutes before I saw Boone again, when we found him dead, as I have stated before, about five or six cars' length east of first car shoved in on No. 4. The second cut of cars was coupled on to first car kicked in on track 4, but was separated one or two car lengths from last string shoved in.

"The brake on the first car shoved in, when afterwards examined, was apparently good, and about half wound up on west end of car. The chain was about half wound up, but dog was not caught. As to signs, the first indication I saw was blood on the rails, afterwards in daylight I found blood on running gear on west end of first car shoved in. I do not remember finding any indication on other cars. I think our crew on that occasion pushed in five cars on track 4.

There were three together on west end and a span of about one car length between the next cut where the body of Boone was found.

"It was a dark night and members of the crew were working by lantern. The engine used was a road engine. It had an electric headlight in front and a small electric light on top of cab in the rear. The headlight was turned in opposite from where Boone was working.

"I have been engaged in the railroad service for about fifteen years, and of this time I spent four years in switching and am familiar with the methods, nature and character of such work. It would have been difficult for Boone to see a cut of cars coming, considering the fact that he was down on an air platform, if engaged in setting the brake. This cut of cars was not in charge of any one as it rolled into sidetrack No. 4, nor was there any light on it. As to the shoving in of the second string of cars, no warning was given Boone. He was about thirty-two years of age, strong and healthy, and was competent in his line of work.

"The engine moved by signals given by myself and yard master Reynolds. Mr. Reynolds gave signal to shove the last string of cars in on track No. 4. Cars would be going at about four miles per hour when cut off, but as it was down grade, they might be going considerably faster when stopped by the buffer car mounted by switchman working in the field—that is, the man who took care of cars when kicked by us down tracks Nos. 4 and 5.

"The sidings were curved and the view of the engine and running cars would be obstructed from point where Boone was at work, if on track 4, nor could we see Boone from the point at which we were at work. There was no way for us to signal Boone of the approach of cars, or otherwise protect him from injury. There was no signal given when switching cars by whistle or bell that I remember."

This case is clearly distinguishable from that class of cases cited by defendant where it has been held that a given state of evidence, as a matter of law, contains nothing from which negligence can be inferred, in that in those cases as a general rule either no relation of duty exists on the part of the railroad company towards the injured party, or facts existed showing such contributory negligence as required affirmative evidence to rebut, while in the case at bar the duty of the master to the servant obtains and no element of contributory negligence was shown. The defendant owed the deceased the duty of the exercise of ordinary care in passing the second cut of cars down track No. 4, in view of the undisputed testimony that his duty was to set the brake and stop the car in a position about six hundred feet down the track, and that in order to do this he was required to assume a position on the west end of the car from which he could not see the approach of the second set of cars. His view was also obscured by a curve in the track. Under these circumstances the jury might reasonably have inferred negligence. The cars were kicked on the track and sent with an initial speed of from four to six miles an hour on a down grade, without a signal or notice or warning of any sort. The night was dark and no lights were on the cars. The physical facts clearly show that the second cut of cars were sent down the track with great and violent force, for the reason it was shown that the

chain on the brake was half wound up and the car had been sent beyond the body of deceased where found some five or six car lengths. This is more clearly shown in view of the fact that the last cut of cars on track No. 4, were at least one car length east of the first and second cuts which had been attached by the automatic couplers. The jury was confronted with the fact that, notwithstanding the first car had been partially set by the brake, yet the impact of the second cut of cars was so great and violent as to push it five or six car lengths down the track, while the third cut of cars of their own motion were stopped one or more car lengths before reaching the said cars. Can it be said defendant owed Boone no duty under the circumstances shown by these facts to warn him of the approach of the second cut of cars? We are not prepared to answer in the negative. It therefore cannot be said as a matter of law there is not any evidence in the record from which defendant's negligence may be inferred by the jury. This is the test of the jurisdiction of this court.

Other reasons might be shown why we think there was some evidence from which the jury might have inferred negligence, and by reason of which we are not authorized to say as matter of law no such evidence existed. It cannot be said, we think, that the manner of deceased's death is a matter of mere conjecture, but there were facts proven from which a jury might conclude with reasonable certainty just how he was killed and the producing cause.

Adjudicated cases on questions of evidence are valuable as precedents only when based on the same or not dissimilar facts, and such cases are rarely found. We have carefully reviewed all the cases cited in the brief of learned counsel for defendant, but find no authority in any of them that would warrant the ruling in this case that there is a total absence of evidence upon which the jury might base a finding of defendant's liability. We are therefore constrained to rule that the judgment of the Honorable Court of Civil Appeals should be affirmed, and it is so ordered.

*Affirmed.*