H. B. BULLARD et ux., Appellants,

v.

Don ROUNSAVILLE et ux., Appellees.

No. 15549.

Court of Civil Appeals of Texas.

Fort Worth.

Oct. 22, 1954.

Rehearing Denied Nov. 19, 1954.

Allen, Crampton, Johnson & Purcell and Roger W. Crampton, Wichita ·Falls, for appellants.

James W. Harvey, Archer City, Strasburger, Price, Kelton, Miller & Martin, Hobert Price, Dallas, for appellees.

BOYD, Justice.

Appellants H. B. Bullard and wife, Stella Bullard, brought this suit against appellees Don Rounsaville and wife, Sue Wilson Rounsaville, to recover damages for the death of their fifteen year old son, Eual Ray Bullard, who lost his life in a collision between a motor scooter which he was riding and an automobile driven by Mrs. Rounsaville. At the conclusion of the evidence, the court instructed a verdict for appellees; and the only point for reversal is that the court erred in instructing the verdict, the contention being that appellants established a prima facie case which was not overcome by appellees.

Mrs. Rounsaville overtook and was attempting to pass the motor scooter when the collision occurred. She is the only living witness to the accident. Appellants alleged that she was negligent in that she did not have her car under proper control; that she did not keep a proper lookout; that while overtaking the scooter she failed to drive on her left side of the road; that she drove a car with defective brakes; that she drove

at a speed in excess of 60 miles per hour; that she drove at a greater speed than was reasonable under the existing conditions; that she drove while her vision was obstructed by rain and dirt on the windshield; that she failed to turn to the left to avoid hitting the scooter; that she failed to give an audible or visible signal of her intention to pass the scooter; that she failed to stop her car to avoid the collision; and that "either one and/or all of said acts were the direct and proximate cause" of the collision.

About eleven o'clock in the morning on July 16, 1953, Mrs. Rounsaville was traveling south from Wichita Falls toward Archer City, and after topping a rise she saw deceased going south on the road in front of her and between her and a bridge. He was on a motor scooter. She was then from ⅛ to ¼ of a mile from the bridge. She testified: that deceased "was playing in the road, going back and forth across the black stripe;" that she sounded her horn and he went back to his side of the road; that when she got within probably three or four car lengths of deceased she decided to pass him and again sounded her horn; at that time "He had just about started on to the bridge, I guess;" that deceased was "just about going off of the bridge" when she got even with him; that when she passed him they were partially off the bridge; that she did not know whether he was completely on the bridge or off of it; that as she remembered, part of the car was on the bridge; "Q. You were on the bridge when you passed him, weren't you? A. Partially. Q. Were you on or weren't you? A. Part of my car was, probably"; that she started around him and he started coming back over to the left side of the road; that she then started honking and pulling off the road; that "at first" she could not pull "too far" to the left because of the bridge; that she could not pull "too far" to the left because of the bridge "and a post;" that she pulled two wheels off the road and "slammed" on her brakes; that she did not think it was "too far" before she entered the bridge when she applied her brakes; that her brakes were on "all the time;" that the scooter hit the right front fender of her car; that when the vehicles came together there was a sudden thump. At other points in her testimony she said the impact was south of the bridge.

It had been raining intermittently as Mrs. Rounsaville drove toward the scene of the accident. She said that where the windshield wipers were it was clean; that the balance of the windshield was "fairly clean;" she would not say that she could not see through the windshield where the wipers did not reach; that it had quit raining; that the roads were slightly damp and might have been "a little bit" slippery; that she drove from fifty to sixty miles per hour, and did not believe that her speed was ever more than sixty; asked her opinion of her speed when she was overtaking deceased, she replied, "Between fifty and sixty;" "Q. you were going that fast on the bridge then? A. Well, I had been driving around 50 or 55, and I imagine I speeded up just a little bit to go around him. Of course, I wasn't going very fast." Appellees' witness, Cooper, a Highway Patrolman, who arrived at the scene at 11:42 A.M., testified that the ground was wet; that the road was slick, and was dangerous "to the extent that any highway of that type is when it is wet;" that Mrs. Rounsaville's car skidded 155 feet and 9 inches before it reached the point of an impact with the scooter, and 128 feet and 6 inches beyond that point; that it stopped after its left rear side hit a post; that the wet condition of the road would make a difference of at least 50 per cent in the effect of the braking power of the car, and if the car was traveling 50 miles per hour when the road was wet, the skid marks would be of the character and length that they would be had the car been going more than 60 or 70 miles per hour on a dry road.

It is undisputed that the impact which killed deceased occurred about 155 feet south of the south end of the bridge. The skid marks of the scooter showed that it made a rather abrupt turn to the left, crossed the center stripe, and collided with the car 4 feet and 7 inches east or to the left of the center stripe.

Appellants urge that there was a prima facie showing that two collisions occurred, the fatal one 155 feet south of the bridge, and a prior one at the south end of the bridge. Mrs. Rounsaville testified that the pictures introduced showed there was damage to the back of the scooter, and that the lower part of her front bumper was shiny. "Q. (referring to the bumper) This is all bent in, isn't it? A. Yes, sir." Cooper testified that the scooter appeared to have been hit with considerable force on its left rear. Appellant H. B. Bullard said that there was no damage to the back of the scooter before the accident. Asked if she could tell whether there had been a prior thump, Mrs. Rounsaville said that she thought she would have known it if there had been a prior thump. She said, "I am pretty sure they (the vehicles) just came together the one time." At other places in her testimony she said there was only one impact; that "I know I only hit him one time. I don't think I hit the back by itself" and "we came together only once." She testified that she turned onto the left side of the road north of the bridge, and was on the left side as she crossed the bridge. Cooper said the car's skid marks started at an angle approximately at the center stripe, and at the south end of the bridge; that if there was an impact there, it would have occurred while the scooter was on its right side of the road; that if the scooter was hit from the rear at the south end of the bridge it would most certainly have gone out of control.

Although the question is not free from difficulty, we think the evidence in the case warranted its submission to the jury.

■ It must be assumed that deceased exercised ordinary care for his own safety. Bohn Bros. v. Turner, Tex.Civ.App., 182 S.W.2d 419; Boaz v. White's Auto Stores, 141 Tex. 366, 172 S.W.2d 481. And since a verdict was instructed, contributory negligence could not be in the case unless it appears as a matter of law.

Appellees contend that any verdict against them would necessarily have been based purely on surmise or suspicion, and that it was just as reasonably probable that the accident resulted through no negligence of Mrs. Rounsaville as that it occurred as a proximate result of negligence on her part. They argue that there was no factual basis for a finding of negligence against Mrs. Rounsaville, and since one presumption may not be based on another presumption, the holdings in Davis v. Castile, Tex. Com.App., 257 S.W. 870; Williams v. Rearick, Tex.Civ.App., 218 S.W.2d 225; Miller & Miller Motor Freight Lines v. Hunt, Tex.Civ.App., 242 S.W.2d 919; and Potter v. Southwestern Associated Telephone Co., Tex.Civ.App., 248 S.W.2d 286, preclude a recovery.

■ We do not go into a discussion of the distinction between a presumption and an inference further than to call attention to some authorities which maintain that a presumption affects the duty of producing further evidence, while an inference is a conclusion drawn from evidence offered. In other words, " * * * a presumption is a rule which the law makes upon a given state of facts, while an inference is a conclusion which, by means of data founded upon common experience, natural reason draws from facts which are proved; * * *." 31 C.J.S., Evidence, § 115, p. 725. See also Strain v. Martin, Tex.Civ.App., 183 S.W.2d 246; Joske v. Irvine, 91 Tex. 574, 44 S.W. 1059; Norfolk Coca-Cola Bottling Works v. Krausse, 162 Va. 107, 173 S.E. 497; Erie R. Co. v. Murphy, 2 Cir., 9 F.2d 525; Neely v. Provident Life & Accident Ins. Co., 322 Pa. 417, 185 A. 784, 789.

■ In the last cited case it was said: " * * * As to the proposition that inferences cannot be based on inferences, Wigmore on Evidence (2d Ed.) vol. 1, § 41, says: 'There is no such rule; nor can be. If there were, hardly a single trial could be adequately prosecuted. * * * The judicial utterances that sanction the fallacious and impracticable limitation, originally put forward without authority, must be taken as valid only for the particular

evidentiary facts therein ruled upon.' Dean William Trickett in an article published in The Forum of the Dickinson School of Law for March, 1906, vol. 10, p. 123, characterizes the postulate that, 'when facts are to be inferred from other facts the latter must be established by direct evidence' as 'error,' and suggests that as a doctrine occasionally recognized as a principle of proof it ought to be 'extirpated.'

"Both in the activities of laymen and in the administration of justice there are many examples of the permissible drawing of more than one inference from a primary established fact. When jurors in their deliberations arrive by a process of reasoning at an acceptable inference of fact, they have a right to add such fact to any previous facts found by them and proceed by ratiocination from such fact or facts to additional inferences of fact and then proceed still further by like process until they arrive at the ultimate conclusion on the issue trying."

Nor do we understand the authorities to hold that before an inference may be drawn from facts, the facts forming the basis for the inference must be undisputed. It is said that they must be proved; but when a verdict is instructed, evidence of probative force, howsoever it may be disputed, has as much dignity as an uncontroverted or admitted fact. When there is a prima facie case, it is for the jury to say what facts have been "proved."

"* * * Once there is a reasonable basis in the record for concluding that there was negligence which caused the injury, it is irrelevant that fair-minded men might reach a different conclusion. For then it would be an invasion of the jury's function for an appellate court to draw contrary inferences or to conclude that a different conclusion would be more reasonable. * * * And where, as here, the case turns on controverted facts and the credibility of witnesses, the case is peculiarly one for the jury. * * *" Ellis v. Union Pacific R. Co., 329 U.S. 649, 67 S.Ct. 598, 600, 91 L.Ed. 572.

"It is no answer to say that the jury's verdict involved speculation and conjecture. Whenever facts are in dispute or the evidence is such that fair-minded men may draw different inferences, a measure of speculation and conjecture is required on the part of those whose duty it is to settle the dispute by choosing what seems to them to be the most reasonable inference. * * *" Lavender v. Kurn, 327 U.S. 645, 66 S.Ct. 740, 744, 90 L.Ed. 916.

■ The question is whether there is any evidence in the record from which the jury might have properly found negligence proximately causing the collision. The question of its "sufficiency," as distinguished from "any" evidence, is not here involved. Houston, E. & W. T. Ry. Co. v. Boone, 105 Tex. 188, 146 S.W. 533; International & G. N. R. Co. v. Vallejo, 102 Tex. 70, 113 S.W. 4, 115 S.W. 25. In the case of Houston, E. & W. T. Ry. Co. v. Boone, the court quoted with approval from Thompson's Commentaries on the Law of Negligence, vol. 6, sec. 7863, as follows [105 Tex. 188, 146 S.W. 535]: "'* * * a verdict for negligence may be supported by inference; but such inference must be a logical, probable, and reasonable deduction from proved or conceded facts. Negligence cannot be a mere matter of conjecture, but must be fairly inferable from the evidence. This principle permits the admission of circumstantial evidence to contradict positive and direct testimony given by eyewitnesses. It is not incumbent upon the plaintiff, after proving an accident which implies negligence, to show the particular negligence, when from the circumstances it is not in his power to do so.' "

It is unnecessary to cite authorities to show that both negligence and proximate cause may be established by circumstantial evidence. Appellees do not otherwise contend.

■ Allowing for the fallibility of human memory and judgment, and for the evident sincerity and forthrightness of Mrs. Rounsaville's testimony—allowances the jury

is entitled to make—the jury has the right to give full weight to that part of her testimony most favorable to appellants, and to give less weight to parts of it most favorable to appellees. We think the evidence when considered, as it must here be considered, in the light most favorable to appellants, was such that the jury might conclude that Mrs. Rounsaville was negligent in one or more of the particulars alleged by appellants, and that such negligence, if any, proximately caused the collision.

The judgment is reversed and the cause remanded.