**W. A. NICHOLS**

v.

**RED ARROW FREIGHT LINES et al.**

No. 6922.

Court of Civil Appeals of Texas.

Texarkana.

Jan. 10, 1957.

On Motion for Rehearing March 14, 1957.

Rehearing Denied April 4, 1957.

Smith & Lehmann, J. Edwin Smith, Houston, for appellant.

Vinson, Elkins, Weems & Searls, C. E. Bryson, Ben H. Rice, III, Houston, G. H. Penland, Dallas, Baker, Botts, Andrews & Shepherd, Thos. M. Phillips, Houston, for appellees.

DAVIS, Justice.

On November 16, 1951, W. A. Nichols, plaintiff below, was an employee of MK–T Railroad Company of Texas, hereinafter referred to as "Katy", and was working as a roadmaster which necessitated that he operate a small railroad motor car upon and along the railroad tracks which ran in an easterly-westerly direction between Smithville, Texas, and Houston, Texas. In the early morning of said date, as Nichols started to cross an intersection of said railroad track on a road known as "Old Plum Road" which road runs in a northerly-southerly direction across said railroad track, while operating said railroad motor car he collided with a truck belonging to Red Arrow Freight Lines, hereinafter referred to as "Red Arrow". Nichols was traveling in an easterly di-

rection and the Red Arrow truck was traveling in a northerly direction. Nichols sustained many serious personal injuries, and filed a single suit against the Katy under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq. and against Red Arrow in a common law action.

He alleged that at the time and on the occasion in question he was acting in the course and scope of his employment for the Katy and that the Katy was negligent in furnishing him a motor car for use in his work without having installed therein or thereon a sufficient warning or signaling device sufficient to warn vehicular traffic of the approach of said railroad motor car.

Nichols alleged a number of acts of negligence by the driver of the truck belonging to Red Arrow, one of which was failure to keep a proper lookout for the approach of railroad vehicles on the railroad track.

The Katy answered by special exceptions (but the record does not reveal any action upon them) and as special defenses alleged specific acts of negligence on the part of Nichols, one of which was that an employee to whom such railroad car had been assigned was responsible for the care and condition of such cars and if, for any reason, such car was considered unsafe by the operator, that it must not be used. Further, that if the car was unsafe for any reason, which the Katy denied, such fact was known to the plaintiff, and if the collision was the result of the use of the car which was not safe to be used, then the act of the plaintiff in using such unsafe car was a violation of a mandatory company rule of the Katy.

Trial was to a jury which found, et cetera, that the failure of the Katy to equip the motor car in question with a signaling device suitable for warning a motorist approaching the crossing at the time and on the occasion in question was *not* negligence; that Nichols operated the motor car onto the crossing on the occasion in question when he considered it to be equipped with an unsafe signaling device, that such act *was* negligence and a proximate cause of the collision; (the evidence showed that the car operated by Nichols was equipped with a small beep-type horn for use in warning section hands of the approach of said car, but was not equipped with a suitable signaling device to warn other vehicles); that Nichols *was* guilty of negligence in operating the motor car in question with the signaling device then on said car and that such negligence was a proximate cause of the collision; and further found that Nichols, on the occasion in question, as he approached the crossing in question, *failed to give such warning* of his approach to vehicular traffic on "Old Plum Road" as would have been given by a person of ordinary prudence in the exercise of ordinary care under the same or similar circumstances, that such act *was* negligence and a proximate cause of the collision. The jury found that Nichols sustained damages in the sum of $39,600 and that his negligence attributable to such damage was 72%. Judgment was rendered that Nichols take nothing against Katy or Red Arrow and Nichols appealed. He brings forward three points of error.

By Point 1, appellant complains of the action of the trial court in entering judgment in favor of the Katy and contends that the jury verdict as between Nichols and the Katy is in irreconcilable conflict. As hereinabove pointed out, the jury found that the Katy was *not* negligent in failing to equip the motor car with a suitable signaling device, and that Nichols *was* negligent in operating the motor car without a suitable signaling device and that such act on the part of appellant was a proximate cause of the collision. We are unable to reconcile the findings. We are unable to see how Nichols, the servant, could be guilty of negligence in operating the motor car furnished to him by Katy, the master, in the same condition in which said car was furnished to him and yet, Katy, the master, not be guilty of negligence in furnishing him an unsafe vehicle to operate. The irreconcilable conflict in the findings of the

jury is too apparent in the face of the record, from the findings of the jury hereinabove stated, to necessitate further discussion. Phillips v. Texas & Pacific Ry. Co., Tex.Civ.App., 223 S.W.2d 258, wr. ref. N.R.E., and authorities cited therein.

By Point 2, Nichols complains of the action of the trial court in refusing certain cross-examination of an alleged expert witness of the Katy. This point relates to the right of interrogation of a witness as to the contents of a railway engineering and maintenance encyclopedia. The original of this book has been forwarded to this Court to use in disposing of this point. Since we have concluded that the jury verdict is in irreconcilable conflict, which necessitates that this case be reversed and remanded, a discussion of this point is unnecessary. But, we doubt that the book sought to be interrogated about had been properly identified or its use sufficiently shown, under the state of this record, to show error. The point is overruled.

By Point 3, appellant complains of the action of the trial court in entering judgment against appellant on grounds of contributory negligence in keeping with certain findings of such negligence on the part of the jury because there was no evidence, or insufficient evidence, to support such findings of contributory negligence by appellant. With this contention we are inclined to agree. The evidence shows that appellant was bereft of all memory of the collision. There was not another eye-witness to the accident, except the driver of the truck of Red Arrow who testified that he did not see the motor car being operated by appellant until the two vehicles collided. Under such state of the record, there is a presumption of due care on the part of appellant and this presumption must prevail unless other evidence raises the issues of contributory negligence, and the burden of bringing forth the evidence of contributory negligence to rebut the presumption was on the defendants. Little Rock Furniture Mfg. Co. v. Dunn, Tex.Civ.App., 218 S.W. 2d 527, affirmed 148 Tex. 197, 222 S.W.2d

985; Koock v. Goodnight, Tex.Civ.App., 71 S.W.2d 927, wr. ref.; Fort Worth & D. C. Ry. Co. v. Longino, 54 Tex.Civ.App. 87, 118 S.W. 198, affirmed 103 Tex. 250, 126 S. W. 8; J. M. Guffey Petroleum Co. v. Dinwiddie, Tex.Civ.App., 168 S.W. 439, no writ history, and Louisiana & Arkansas R. Co. v. Pruitt, Tex.Civ.App., 298 S.W.2d 608.

The jury convicted the operator of the Red Arrow truck of eight separate acts of negligence, and we think the evidence is sufficient to support a judgment for damages, at common law, against Red Arrow. We think a very similar situation exists to that reported in Muse v. McWilliams, Tex. Civ.App., 295 S.W.2d 680. In that case the driver of the vehicle admitted that he drove onto a state highway in an intersection without knowing of the presence of an approaching pick-up truck until he heard the screeching of the brakes. See also the cases cited therein. Point 3 is sustained.

For the errors pointed out, the judgment of the trial court is reversed and the cause is remanded.

FANNING, Justice.

I respectfully dissent. I would affirm the judgment of the trial court.

On Motion for Rehearing

CHADICK, Chief Justice.

In the opinion handed down January 10, 1957, this case was reversed and remanded, Mr. Justice FANNING dissenting. On motion for rehearing the majority of the Court as it is now constituted has concluded that the case should be affirmed.

Suit was brought by W. A. Nichols, a roadmaster of the M-K-T Railroad Company of Texas, against the Red Arrow Freight Lines in a common law negligence action combined with a statutory action under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., against his employer, the M-K-T. On answer by the

jury to the special issues the trial court entered judgment denying Nichols a recovery against either.

Appellant's three points of error are very concise. They are: (1) That the jury's answers to special issues are in irreconcilable conflict; (2) Nichols was denied proper cross-examination of an expert witness; and (3) there is no evidence to support the jury findings of Nichols' contributory negligence.

In considering the first point it must be kept in mind that this suit as filed actually joins two independent causes of action in which the law relating to duty and liability differ. To avoid confusion it should be emphasized that the Railroad sought no damages or relief against Red Arrow nor did Red Arrow seek damages against the Railroad because of the collision of the Railroad's track motor car and the Motor Freight Line's truck. The doctrine of "respondeat superior" had no application and no party to the suit so contends.

The conflict is said to arise in the jury answer to these two issues:

"Special Issue No. 8: Do you find from a preponderance of the evidence that the conduct of the Missouri-Kansas-Texas Railroad Company of Texas in not equipping the motor car in question with a signaling device suitable for warning a motorist approaching the crossing at the time and on the occasion in question was negligence as that term is defined below?"

Answer: "We do not."

"Special Issue No. 13: Do you find from a preponderance of the evidence that the action of W. A. Nichols in operating the motor car in question at the time of and immediately before the collision in question, with the signaling device then on said car, was negligence as that term is herein defined to you?"

Answer: "We do."

Issue No. 8 related to the Railroad's negligent omission of duty it owed its employee Nichols, in failing to equip its motor car with a suitable signaling device for warning motorists approaching a crossing. It is emphasized that this is the only act of primary negligence Nichols charged against the Railroad, submitted by the court. The jury's answer absolves the Railroad of the alleged negligent omissions.

Issue No. 13 related to W. A. Nichols' alleged negligent act causing or contributing to cause his own injury in operating the motor car with such signaling device as was then on the car. This was one of Red Arrow's defensive issues in which it defended against Nichols' common law action by showing that Nichols' negligence caused or contributed to cause his injury insofar as Red Arrow was concerned, and was found in favor of Red Arrow by the jury.

■ Since Nichols' action against Red Arrow was founded on common law principles it is elementary that his contributory negligence, if found by the jury, barred a recovery against Red Arrow. As between Nichols and Red Arrow, the answer to Special Issue No. 8 has no materiality one way or another simply because that issue related only to Nichols' action against M-K-T and it naturally follows no recovery could be based upon it or barred by it as to Red Arrow.

And to further demonstrate, the same is true as between Nichols and the Railroad, the finding on Special Issue No. 13, a Red Arrow defensive issue, in the common law action, has no effect one way or another as to the Railroad. The act of negligence inquired about is not relied on by Nichols or Red Arrow for or in bar of a recovery against the Railroad, and it follows that it can neither be looked to in support nor in bar of a recovery by Nichols against the Railroad in the statutory action.

■ Until the contrary is shown, it must be presumed that the jury answered the special issues in the light of the pleadings

of the parties, of the evidence before it and the court's charge. The jury could understandably and logically in response to Special Issue No. 8 find that the Railroad Company breached no duty to Nichols in furnishing a motor car with a signaling device such as shown to be on the car here involved, or without a signaling device at all, in view of the Railroad's rule that Nichols should give highway traffic the right of way and which adjures him to not "assume that others see the motor car or that they will stop or get out of the way." And, at the same time, find that Nichols failed to act in the interest of his own safety and was negligent in operating the motor car with its limited signaling device across the railroad and highway intersection when it was not clear, after his employer had ordered him to stop on such occasions.

In the first instance, the Railroad had a safety rule to protect its employees, he was not to move over the crossing unless it was clear, regardless of its signaling device, and even if his motor car was prepared to and could warn highway vehicular traffic of its imminence, by way of the safety rule he was still under his employer's orders to stop. In the second instance, without regard to employment, Nichols could clearly be, as the jury found he was, lacking in his duty to act in the interest of his own safety in operating a motor car across the highway without being able to warn vehicular traffic.

It can not in reason be contended that an employee can not be guilty of negligence toward some third party without his employer being guilty of a breach of duty to the employee. For this Court to so hold would establish a liability heretofore unknown to the law. If so, it would lead to the absurdity that the employee under the Federal Employers' Liability Act, could establish his claim against the employer simply by proving his own negligent act toward some outsider. Bear in mind there was no allegation or contention made in the trial court that the Railroad should have fore-

seen that Nichols would operate the motor car in the face of oncoming traffic. There is no inconsistency or conflict in the answers if the issues are clearly in mind.

The test to determine conflicting answers requiring a judgment to be set aside is stated by the Supreme Court in Little Rock Furniture Mfg. Co. v. Dunn, 222 S.W.2d 985, 991, in the following language:

> " * * * To require a judgment entered on a verdict containing conflicting answers to be set aside, the conflict between the answers must be such that one answer would establish a cause of action or defense, while the other would destroy it. * * *

> "To apply this test, the court must consider each of the answers claimed to be in conflict, disregarding the alleged conflicting answer but taking into consideration all of the rest of the verdict, and if, so considered, one of the answers would require a judgment in favor of the plaintiff and the other would require a judgment in favor of the defendant, then the answers are fatally in conflict. It is essential that the party seeking to set aside a verdict on the ground of conflict must be able to point out that one of the conflicting answers of the jury, in connection with the rest of the verdict except the issue with which it conflicts, necessarily requires the entry of a judgment different from that which the court has entered."

This test has been reaffirmed by that court in the late case of Luther Transfer & Storage Co. v. Walton, 296 S.W.2d 750.

Applying the criteria of the Little Rock case, since Special Issue No. 8 is not an element of Nichols' cause of action against Red Arrow nor is it an element of Red Arrow's defense against Nichols' cause of action, the answer to it could not be a basis for a judgment for either Nichols or Red Arrow. Obviously, the same conclusion is

reached by applying this test to Special Issue No. 13. That issue is not an element of Nichols' case against the Railroad, and any answer to it could not be the basis for granting or barring a recovery by Nichols against the Railroad. Without prolonging the opinion with further demonstrations, the same conclusion is reached in applying this test to Red Arrow's other favorably answered defensive issues.

Special Issue No. 23, relating to Nichols' failure to keep a "proper lookout" was a common defensive issue pleaded by both the Railroad and Red Arrow. Disregarding Special Issue No. 8, and considering the remainder of the jury's answers, the answer to this issue finding Nichols negligent is an absolute bar to recovery against Red Arrow in the common law suit, but because of the comparative negligence provisions of the Federal Employers' Liability Act, it would only be a partial bar to recovery against the Railroad Company. Then, looking to the remainder of the issues, since no primary negligence was found against the Railroad the matter of comparative negligence becomes of no significance.

This finding of Nichols' negligence is a matter which might be weighed against a possible breach of duty by the Railroad, if the jury had found the Railroad negligent in any respect, but the answer to this issue is not a finding nor equivalent to a finding that the Railroad did in fact breach a duty to Nichols. The effect of the whole verdict without considering Issue No. 8 is that no ground of primary negligence is found upon which a judgment for Nichols may be based against the Railroad. Considered from this viewpoint, the only judgment to be entered is one relieving the Railroad of liability. Reversing the process and disregarding Special Issue No. 23, the absence of a finding of primary negligence against the Railroad renders the only judgment possible to be that the defendant take nothing. Red Arrow, though convicted of acts of primary negligence is required to be discharged because of Nichols' contributory negligence.

The Issues Nos. 8, 13 and 23 are used here as illustrations. The same reasoning applied to them is valid if applied to alleged conflicts between the answer to Special Issue No. 8 and the answers to other Red Arrow, or, if any, common defensive issues. There being no conflict, appellant's point is overruled.

Passing to appellant's next point: When the Railroad's Engineer of Maintenance of Way was testifying on direct examination, he expressed an opinion that the type of motor car here involved was standard equipment on the M-K-T and of the latest design and best adapted to the purpose for which it was used. On cross-examination it was further developed that he had previously been Superintendent of Safety for the entire M-K-T System. Counsel for the appellant elicited from him that he had in his office a "1948 Railway Engineering & Maintenance Cyclopedia" and that he used it for reference and thought it was authoritative, and in a following question, that he used it simply as a catalog to locate various types of devices he might be interested in. In almost the same breath he stated that he recognized it as an authority and that he did not. When appellant's counsel sought to cross-examine him as to the contents of the Cyclopedia, the court excluded the cross-examination.

Isolated answers would support the view that he considered it an authority and referred to it while another answer standing alone would support the view that he simply used it as a catalog. The trial judge saw the witness and heard all of his testimony, and it may be implied from his ruling that he understood the witness to be saying, and found as a fact, that the witness only used the Cyclopedia as a catalog. Examination of the publication shows it to be both a treatise on many phases of maintenance and safety and also a catalog of items furnished railroads by numerous manufacturers.

Admission of expert testimony is addressed to the sound discretion of the

trial judge and great weight must be given the judge's findings of fact regarding the proof of antecedent facts forming the grounds for admission of such testimony, and unless his construction of the evidence is clearly wrong, no abuse of discretion is shown. Culver v. State, Tex.Civ.App., 85 S.W.2d 997, wr. ref. There being two possible constructions, the implied construction made by the trial judge is clearly permissible, and no limitations on proper cross-examination of an expert witness is shown. Additionally, the judge might properly have excluded the cross-examination because he was not satisfied the examination related to the field in which the witness testified. This point is overruled.

Appellant's final contention that there is no evidence or insufficient evidence to support any or all of the jury's findings on eight specific acts of contributory negligence, charged against Nichols by Red Arrow and found by the jury, must also be overruled.

The statement of facts consists of three volumes and 800 pages of testimony together with another volume of exhibits consisting largely of photographs. Two weeks were consumed in the trial. It followed that an extensive recitation of the testimony is not feasible. Briefly, there is testimony by Nichols himself that he considered the crossing a hazardous one and knew of the importance of being prepared to stop and that railroad safety rules required him to yield the right of way to highway traffic at the crossing and that gravel trucks continually crossed the track at the place of the collision and that in the some five hundred times he had made the crossing he regularly stopped or slowed down for gravel trucks. It is in evidence that Nichols knew the railroad tracks were substantially hidden from a motorist on the highway by an embankment and weeds. Photographs were in evidence showing the tracks of the truck involved and the position at which the truck and the motor car came to rest after the collision and showing their damaged condition. Also there is evidence that the Red Arrow truck was on the track when the motor car struck it and was being driven in a straight line and at a reasonable rate of speed together with evidence that the truck was struck with terrific force and the brake lever on the Nichols motor car was in neutral after the accident in such position that the brakes were not being applied. The brakes were so constructed that if once applied they would lock until released. The railroad safety rules respecting operation of motor cars, etc., also were before the jury. Such testimony and inferences therefrom raises the issues of Nichols' omissions of duty in failure (a) to keep proper lookout; (b) to keep proper control; (c) to make proper application of brakes; (d) to prepare to stop; (e) in violation of railroad safety rules; it has probative force, and if believed by the jury, adequately supports the jury's findings. Houston E. & W. T. Railroad Co. v. Boone, 105 Tex. 188, 146 S.W. 533; Bock v. Fleman Dry Goods Co., Tex. Com.App., 212 S.W. 635; Phoenix Refining Co. v. Powell, Tex.Civ.App., 251 S.W. 2d 892.

■ The same may be said respecting the defensive issues concerned with (a) Nichols' failure to yield the right of way, (b) failure to bring his motor car to a stop, and (c) his act in moving his motor car a greater distance into the intersection than was proper. In addition to that already listed, there is evidence that the truck driver at a point less than 35 feet from the crossing could see no motor car in view, and had the motor car been in or near the crossing the truck driver would have seen it, that the truck was on the track when the motor car hit it and that the motor car struck the truck from the side. Further, there is testimony that the force of the impact came from the motor car and that only the left side of the truck was damaged while the front end of the motor car was damaged and that the imprint of the motor car was indelibly stamped on the side of the truck and there are pictures of the points of damage to the two vehicles. This

evidence together with that already mentioned raises the issues indicated, and supports the jury's findings.

■ A finding of contributory negligence by Nichols as to any of these issues would compel a judgment in favor of Red Arrow. Voland v. Connor, Tex.Civ.App., 258 S.W. 2d 423; Aranda v. Texas-New Orleans R. R. Co., Tex.Civ.App., 140 S.W.2d 236.

Finding no error in the record and that the judgment should be affirmed, the motions for rehearing filed by M-K-T Railroad Company of Texas, and Red Arrow Freight Lines are accordingly granted, the opinion of January 10, 1957, is superseded and the judgment of the trial court is affirmed.

FANNING, J., concurs.

DAVIS, J., dissents.

FANNING, Justice.

I concur in the opinion in this case by Chief Justice CHADICK. It is well-reasoned and in my opinion thoroughly discusses the controlling questions raised by the parties on the appeal. I agree completely with Chief Justice CHADICK in the affirmance of the judgment of the trial court.

DAVIS, Justice.

I dissent from the opinion of the majority in granting the motion for rehearing and affirming the judgment of the trial court. Since the original opinion was handed down, the membership of the Court has changed, and we now have two judges reversing this case and two affirming.

A full discussion of the facts in the case was not set out in the original opinion of this Court because such discussion was not deemed necessary. In view of the last action taken, I feel it my duty to discuss the facts more fully.

First, I quote from the original brief of appellee Katy, an excerpt from Harrison v. King, Tex.Civ.App., 296 S.W.2d 344, 346, as follows:

"We have here a complicated, multipartied suit with complex relations. The trial court simplified the suit by aligning the parties, reducing the issues, and eliminating the traps for the jury. A trial judge often does the best he can with an imponderable situation. Perfection in submitting nonconflicting, unconditional, multi-parties issues leads us to the brink of some future case which will be impossible to submit except by a general charge."

We have just such a case here. This is the most confusing record that I have had occasion to examine. We have here two distinct lawsuits growing out of a single accident. Appellant alleges one cause of action based upon one state of facts against appellee Katy under the Federal Employers' Liability Act, and Katy denied the state of facts as well as liability under such Federal Employers' Liability Act, and pleads certain acts of negligence on the part of appellant for reduction of damages under the doctrine of comparative negligence.

Appellant alleges another and distinct state of facts in a cause of action, against Red Arrow Freight Lines under the common law, and Red Arrow defends under allegations of affirmative defenses different from those of appellee Katy.

One of the special exceptions referred to in our original opinion was by appellee Katy on the ground that there was a misjoinder of parties and causes of action. In fairness to all parties, that exception should have been sustained. Where the parties and causes of action are different, and different rules of law are applicable to each party, the parties nor causes should be joined. 3 McDonald Civil Practice, 915, Note 66, and authorities cited therein.

The trial judge recognized the conflicts of facts, interests, the law applicable thereto, and made mention of same at several stages in the trial in the course of his rulings.

A summary of the evidence, as I see it, is as follows:

As to appellant Nichols: He was past 60 years of age at the time of the collision from which this lawsuit arose. He was a Roadmaster for Katy and operated a small motor car with a maximum speed capacity of 25 miles per hour. He sustained severe and permanent injuries in the collision and was unconscious for some 30 or 40 days. He suffered severe injury to the brain which caused retrograde amnesia and was unable to remember anything at all about the accident. The injury to the brain also caused him to develop mellitus diabetes by the time he had regained consciousness. He had been railroading since 1908 and had been a Roadmaster for many years. The testimony shows, without objection, that he always operated the motor car in question at a rate of speed of six to eight miles per hour, and abided by all the rules and regulations of the Railroad in relation to intersectional crossings. He was never involved in any kind of accident with the motor car in all his years of operation. At the time of the accident he was earning in excess of $5,000 per year, and it is not seriously contended that he is not now totally and permanently disabled from following any kind of gainful employment. As a result of the injury to his brain, he is unable to maintain his balance and fell once since the accident and broke his hip.

As to appellee Katy: Appellant went out on his job as Roadmaster on the morning of November 16, 1951, in a little motor car. At a certain point on his route, about 7:55 in the morning, he made his last stop, as shown by the record in this case, prior to the collision in question. From this point he traveled alone to the point of the collision which occurred approximately at 8:20 A.M., three and one-half miles from the last stop, without the remotest indication of any other stop or delay, which would indicate appellant had traveled an average speed of six to eight miles per hour from the point of last stop to the point of collision. This is a strong circumstance to support the testimony of appellant that he usually operated such motor car at six to eight miles per hour. There is not one scintilla of evidence in this record that appellant ever operated his motor car at a faster rate of speed. And, as pointed out in the opinion of the majority, the little motor car was found in neutral when it came to its resting place immediately after the collision and the brake was not set. The only reasonable inference that could be drawn from this state of facts is that the little motor car had come to a stop and was sideswiped by the truck. I will point out here that the first damage shown to the truck, as revealed by the exhibits in evidence, shows that the first contact between the truck and the motor car was immediately behind the left headlight on the truck and extended back to the back edge of the door. From viewing the photographs, it is clearly evident that the farther toward the rear of the truck the damage was done, the deeper the dent. With the truck traveling at an admitted rate of speed of 25 to 30 miles per hour at the time of the impact, loaded with 3,000 pounds of cargo, fixing to make a sharp right-hand turn into a narrow lane only 30 feet distant from the point of impact, it can only be inferred that the truck was making a swing or swerve to the left to negotiate the curve. As a matter of common knowledge, a truck could not negotiate a right-angled curve at 25 to 30 miles per hour into a narrow lane.

As pointed out in the original opinion, the collision occurred at a railroad-public road intersection. The truck driver was on his way to a gravel pit, and to reach the same the truck driver had to turn off at a sharp right-hand curve about 30 feet beyond where he crossed the railroad. It is the contention of appellant that the truck swerved to the left to negotiate the curve

at 25 or 30 miles per hour and in so doing "side-swiped" the motor car operated by appellant and hurled or dragged the motor car some' 18 or 20 feet off the railroad and caused the resulting injuries to appellant. Although one witness testified that the motor car was about five feet from the nearest rail of the railroad and on the left hand side of the railroad with reference to the direction it was going and *on the left shoulder of the road* with reference to the direction the truck was traveling, I think the evidence is conclusive that the motor car was some 18 or 20 feet from the railroad and on the left hand side of the public road with reference to the direction the truck was traveling, because the truck driver and one witness for the Katy so testified and the exhibits show the motor car near a "cross-buck" sign which is conceded to be 20 feet from the nearest rail from the railroad. The only way the motor car could have gotten to its resting place was by being knocked there by the truck. As is hereinafter pointed out, the maximum rate of speed which the motor car was traveling, as shown by circumstantial evidence would not be more than eight miles per hour, and it is unreasonable to believe that such rate of speed would have caused the motor car to have bounced backward for a distance greater than half the width of the main traveled portion of the public road, which is shown to be some 15 or 16 feet wide, and land either five or 20 feet from the railroad.

The Katy pleaded a violation of some three or four rules of the Railroad by appellant. The jury convicted appellant of 12 different acts of alleged negligence as follows: (1) *Operating the motor car onto the crossing when he considered it to be equipped with an unsafe signaling device; (2) operating the motor car at the time and on the occasion in question with the signaling device then on said car;* (3) that he failed to yield the right of way; (4) that he failed to stop before entering the crossing; (5) failure to apply his brakes; (6) failure to keep a prop-

er lookout; (7) failure to give a warning as would have been given by a person of ordinary prudence in the exercise of ordinary care; (8) failure to keep the motor car under control; (9) driving the motor car into the intersection for a greater distance than a person of ordinary prudence in the exercise of ordinary care; (10) failure to observe railroad Rule 95 which reads in part as follows:

"Run slowly over switches, turnouts, railroad crossings, highway crossings and around curves; * * *"

(11) failure to operate his motor car so as to be prepared to stop should any person or vehicle move onto the track; (12) failure to comply with the provision of Rule 97 reading as follows:

"Approach highway crossings, persons on or near the track cars on adjoining track, buildings or other places where view is obstructed, prepare to stop, should any persons or vehicles move onto the track. Do not assume that others see the motor car or that they will stop or get out of the way."

There is absolutely no evidence at all of a single act or thing the appellant did or did not do as he approached the crossing, such as whether he stopped, kept a proper lookout, failed to yield the right of way, etc. I challenge the majority to quote any such evidence from the record.

The trial court excluded part of Rule 105, which reads as follows:

"Brakes should be applied gradually, except in cases of emergency, when warning should first be given."

This rule was specifically promulgated by appellee Katy to govern operation of motor cars such as was in use by appellant. It was excluded because a witness for Katy testified that the rule did not apply to intersections. There was nothing offered to support such testimony, except the self-serving construction placed thereon by the witness. I think the rule should have been

admitted. When the motor car in question was delivered to appellant for use, Katy also delivered to him a magazine or booklet furnished by the manufacturer of the motor car which recommended certain signaling devices for use on such cars. Appellant attempted to offer the magazine or booklet in evidence, but it was excluded on objection of Katy because appellant had not proved that such was authority in support of the purpose for which it was issued. This magazine or booklet having been furnished to the employee by Katy, I think it was admissible and subject only to such explanation as could be made by Katy.

In this connection, I want to briefly discuss again the question of the admissibility of excerpts from the Railway Engineering & Maintenance Cyclopedia as raised by appellant in his second point of error. This cyclopedia *was furnished to appellant by Katy;* although, appellant was required to pay for it, it was unquestionably supposed to serve some purpose; therefore, the excerpts from this cyclopedia that were offered upon trial of the case were admissible. The excerpts offered from page 20 of the cyclopedia are as follows:

*"Safety Appliances For Motor Cars"*

"It must be recognized that the operation of motor cars involves certain hazards most of which can be controlled if the cars are operated safely and equipped with the necessary safety devices. * * * *All motor cars should be equipped with a gong, bell, horn or other suitable warning device."* (Emphasis added.)

The excerpts offered from pages 28 and 29 of the cyclopedia were as follows:

*"Safety Appliances"*

"Among the various elements of design which are conspicuous in today's track motor cars are those appliances which have been developed *essentially in the interest of safety.* * * * *Ex-*

*perience has shown that other appliances such as * * * warning devices * * * all add to the safety of motor car operation."* (Emphasis added.)

It is a matter of common knowledge that it is the duty of a careful and prudent operator of a motor vehicle in crossing a railroad to listen for a warning signal. The comment of the trial judge commenting on the need of a signaling device in such instances as we have here (found beginning on page 548, Vol. III, Statement of Facts), is timely illustrative of such matters of common knowledge. I quote:

"The Court: Well, it is just an absurdity then. Mr. Nichols entered into it. I am not applying the facts of this particular case, but here comes a man through those curves at 90 miles an hour. There is no question that Mr. Nichols looked down there and there wouldn't be any question that he looked as far as he could, but he had slowed down, we will say, to be sure he was going to yield the right-of-way, to two miles an hour. Before he can get through there at that rate of speed, the other man, going 45 times as fast as he is, could come up such a distance that he couldn't even discover—now, would (sic—could?) he have yielded?" (Interpolation mine)

Then, in the case of St. Louis B. & M. Ry. Co. v. Watkins, Tex.Civ.App., 245 S. W. 794, 797, wr. dism., the court in speaking of the necessity of a signaling device on a motor car such as involved in this case, said:

"It may be true as contended by appellant, that the provisions of Rev.St. 1911, art. 6564 [Now Art. 6371], Vernon's Ann.Civ.St., do not apply to a car propelled by a motor; still such car would not be licensed to run over railroad tracks without being equipped with apparatus for giving adequate signals of its approach to public crossings, and was in effect and substance

what was alleged in the petition, and the court very properly admitted testimony tending to show the inadequacy of the signals given by the motorcar, and very properly submitted the issue as to whether the motorcar was equipped with a whistle reasonably calculated to give reasonable notice to the public of its approach."

I am unable to see anything but a conflict in the findings of the jury between Special Issues Nos. 8, 13 and 26 as to the Katy. Despite what the majority says, the Katy pleaded as a special defense that Nichols was guilty of negligence in operating the motor car with the signaling device that was upon it and alleged that such operation was a violation of Company Rule 84, even though Nichols had requested and been refused a suitable signaling device. Rule 84 prohibits the use of such a motor car when it is unsafe. The jury found it was unsafe because it did not have upon it a suitable signaling device, and that finding is in favor of Katy. Katy knew its unsafe condition just the same as Nichols did. The jury finds Katy not guilty of negligence in failing to furnish such suitable signaling device, and convicts Nichols of negligence for operating the motor car without such device. Then Katy would like for the employee, Nichols, to be governed by its interpretation of all the Rules, more especially Rule 105 which provides in part as follows: " * * * Brakes should be applied gradually except in cases of emergency, when *warning* should first be given." (Emphasis supplied.) This will be discussed further later on in this opinion.

As to Red Arrow: What I have said about the jury's findings in relation to contributory negligence, in relation to the Katy, is applicable here.

As above stated, the maximum speed the motor car was capable of making was 25 miles per hour. The record shows it is 50 to 75 feet from the embankment beside the railroad track to the intersection of the highway where the collision occurred. From what has been hereinabove stated relative to the speed of the motor car being operated by appellant, the highest rate of speed which could be assumed from the circumstantial evidence, would be eight miles per hour, but more definitely six miles per hour. The truck driver admits he was driving about 25 to 30 miles per hour when he crossed the railroad track. The truck driver says he did not see or hear appellant, or know he was anywhere about until the motor car and the truck collided and contends that he was on his proper right-hand side of the road. He said he looked for a *train* when he was within about 35 feet of the tracks but did not see anything, then looked and proceeded straight ahead. He did not see the motor car until *after* the collision and did not hear anything at all. This presents an impossibility. If the motor car was not in sight when the truck was within 35 feet of the railroad track, the motor car would have to be traveling at a *minimum* rate of speed of 120 miles per hour to have reached the intersection in time to have struck the truck where it did, which rate of speed for the motor car was admittedly impossible.

It, Red Arrow, offered into evidence its Exhibit 16 to show the position of the truck and the motor car after the collision, as well as alleged skid marks of the rear dual wheels of the truck *across* the railroad track. The exhibit clearly indicates that the rear wheels of the truck were skidding when they reached the first rail of the railroad from the side from which the truck was approaching. If the skid marks shown in the exhibit are the skid marks of the truck of Red Arrow, made at the time and on the occasion in question, then the testimony of the driver cannot be true that he did not see or know of the presence of the motor car until the vehicles collided. At the time of the collision, other exhibits indicate that the front wheels of the truck were at or about the farthest rail of the railroad from the side from which the truck

was approaching. This being true, and the truck traveling 30 miles per hour, *which would be 44 feet per second,* the driver of the truck would *not* have had time for his mental reflexes to act, then put his foot on the brakes and start his rear wheels sliding in less than a second. The truck being a "bob-tail" or short wheel-base truck, 22 feet in length, the rear wheels of the truck would have been at least 25 or 30 feet beyond the railroad track before he could have sufficiently applied his brake to have started the wheels skidding.

Then, it is a pretty well-settled rule of law that a person who enters an intersection first has the right of way. Muse v. McWilliams, Tex.Civ.App., 295 S.W.2d 680, and authorities cited therein. The evidence shows that the main portion of the traveled road at the point was some 15 or 16 feet in width. The evidence does not show exactly where the vehicles collided with reference to the center of the main traveled part of the road. But, assuming that the truck was on its proper right-hand side of the road and the motor car was traveling eight miles per hour, 11¹¹⁄₁₅ feet per second, and the truck was traveling 25 or 30 miles, 36⅔ to 44 feet per second, the motor car unquestionably entered the intersection first, because it would have had to cross over the left-hand side of the traveled portion of the highway with reference to the way the truck was going before it entered the right-hand lane. If the truck had gotten there first, it would have been several feet across the railroad before the motor car reached the right-hand side of the main traveled road.

To reach the conclusion reached by the jury and the majority of this Court in the last opinion in this case, all of the facts found by the jury and the majority are presumed, because there is not one word of testimony that will justify such conclusion, not even circumstantial evidence. Note the absence of quoted testimony. In other words, to reach this conclusion the jury and the majority must presume the first fact and then presume all the other facts upon the

first presumption which is contrary to the well-established law of this State. 17 Tex. Jur., 247, Sec. 57, and authorities collated thereunder, including Ten Year Supplement.

A careful study of the record in this case, *and this dissenting opinion* will not justify the statement of the majority that:

"It can not in reason be contended that an employee can not be guilty of negligence toward some third party without his employer being guilty of a breach of duty to the employee. For this Court to so hold would establish a liability heretofore unknown to the law. If so, it would lead to the absurdity that the employee under the Federal Employers' Liability Act could establish his claim against the employer simply by proving his own negligent act toward some outsider. Bear in mind there was no allegation or contention made in the trial court that the Railroad should have foreseen that Nichols would operate the motor car in the face of oncoming traffic. There is no inconsistency or conflict in the answers if the issues are clearly in mind."

Nothing can be more absurd than to say there is any evidence in this record to support the verdict of the jury of any act of negligence by appellant, much less a dozen such acts.

Under the point of error as raised by appellant on the issue of no evidence and insufficiency of the evidence, it is our duty to examine the evidence as a whole and if error has been committed by the trial court or the jury, or both, to correct the same. Ex parte King's Estate, 150 Tex. 662, 244 S.W.2d 660.

I believe that every case should rest upon its own bottom, be decided on its own individual merits from the standpoint of law and justice; recognizing the fact that jurors and trial judges, like appellate judges, are human and capable of making

mistakes. We, here, have more time to review the facts and the law than do jurors and trial judges, which is the very purpose of the office. When this purpose is applied, the verdict of the jury and judgment of the trial court cannot be sustained on either a factual basis or from a simple mathematical calculation, as hereinabove demonstrated.

I am convinced that the knowledge of the law, as well as the wisdom of counsel for Katy was well founded when they insisted on a severance of the causes and that if a severance had been ordered, we would not have the confusing record that we have before us. Neither would there have been a probability of injustice being done either party by such severance. I can readily see where a jury verdict in favor of plaintiff could result in an injustice to either of the defendants.

I would still reverse and remand the cause.